[No. B191662. Second Dist., Div. Eight. Mar. 28, 2008.]

WSS INDUSTRIAL CONSTRUCTION, INC., Plaintiff and Respondent., v. GREAT WEST CONTRACTORS, INC., et al., Defendants and Appellants.

584

---

## COUNSEL

Pitre & Teunisse, Inc., Carole M. Pitre and Patricia A. Teunisse for Defendant and Appellant Great West Contractors, Inc.

Robins, Kaplan, Miller & Ciresi, Edward D. Lodgen and Laura P. Nash for Defendant and Appellant Fidelity and Deposit Company of Maryland.

Hunter, Molloy & Salcido, John Logan Hunter and David A. Delgado for Plaintiff and Respondent.

OPINION

## COOPER, P. J.—

### SUMMARY

A corporate subcontractor sued a general contractor to recover for work performed under a construction services agreement. At trial, the general contractor and its surety moved for nonsuit arguing the subcontractor was barred by the Contractors' State License Law, Business and Professions Code section 7000 et seq. (the CSLL), from maintaining any action for recovery because the subcontractor was not properly licensed at all times during its performance of the contract. The trial court disagreed. It concluded the corporation's president held a valid individual contractor's license at all times and that, in any event, licensure was not required for tasks the corporation performed prior to obtaining its license. The court found "there was substantial compliance with the licensing [statute] during the contract and work was performed in good faith," and denied the motions for nonsuit A jury found in favor of the subcontractor and awarded over $220,000 in damages, statutory penalties and interest.

We conclude the trial court erred in denying nonsuit. With one exception, the CSLL forbids a contractor from recovery—in law or at equity—on an otherwise valid claim for performance of any service for which a license is required if the contractor was unlicensed at any time during performance of the work. In this case, the subcontractor was unlicensed during a period in which it performed services that could only be performed by a licensed contractor. We further hold the subcontractor is unable to meet the threshold requirement to invoke the statutory exception of substantial compliance with the CSLL, because it was never licensed as a state contractor prior to beginning performance. Accordingly, we will reverse and remand the matter for entry of judgment in favor of the general contractor and its surety.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff and respondent WSS Industrial Corporation, Inc. (WSS or, at times, the corporation), a steel subcontractor, sued general contractor appellant Great West Contractors, Inc. (Great West), to recover for work WSS performed under a subcontract with Great West for improvements on a public works project at the new Middle School for the Deaf, in Riverside, California (the project).

---

[1] Our factual recitation and discussion are limited to the dispositive issue of licensure.

On August 28, 2001, WSS submitted a bid proposal to Great West to perform steel construction work on the project for $440,000. At the time WSS submitted its bid it had applied for but had not yet obtained a corporate contractor's license. That license was issued on December 21, 2001. The bid proposal was incorporated into a subcontract with Great West. WSS subsequently filed this action against Great West and its surety, appellant Fidelity and Deposit Company of Maryland (Fidelity),[2] seeking approximately $91,000 for unpaid services under the subcontract and change orders thereto.[3]

A jury trial was conducted in January 2006. After WSS rested, Great West and Fidelity moved for nonsuit, asserting WSS was statutorily barred by the CSLL from recovery under the subcontract because it was not duly licensed at all times during performance of the contract, and could not demonstrate substantial compliance with state licensing requirements because the corporation never held a California contractor's license before it began work under the subcontract. (Bus. & Prof. Code, § 7031, subd. (a); all further statutory references are to that code.) WSS opposed the motions. The court conducted an evidentiary hearing on the licensing issue and WSS's claim that it substantially complied with the CSLL, and took the matter under submission. Ultimately, it denied the motions for nonsuit. It concluded that WSS's president, Henry Ramirez, held valid individual licenses at all times and that, in any event, licensure was not required for certain tasks WSS performed before December 21, 2001. The court held "there was substantial compliance with the licensing during the contract and work was performed in good faith." The matter proceeded. The jury returned a special verdict in favor of WSS, which was ultimately awarded approximately $220,000 in contract damages, statutory penalties and interest. This appeal follows the denial of appellants' posttrial motions for a new trial, vacation of the judgment,[4] and/or judgment notwithstanding the verdict.

## DISCUSSION

Great West insists the trial court erred in denying nonsuit because there can be no question WSS, the corporate entity, was not licensed, as required by section 7031 of the CSLL, at all times during its performance of the construction services agreement it seeks to enforce. And, because WSS was not duly licensed and cannot satisfy the strict requirements of the statutory substantial compliance exception, Great West contends WSS is barred from

---

[2] The interests of Great West and Fidelity are aligned on appeal. Thus, for the sake of brevity, we will refer to appellants collectively as Great West.

[3] Initially, this litigation involved Great West and its sureties on four separate construction projects. Settlements were reached as to all projects except the Middle School for the Deaf.

[4] A portion of Great West's motion to vacate the judgment was granted on grounds not relevant here.

maintaining this action, regardless of its merits, and from any recovery at law or in equity. We conclude Great West is correct. We summarize first the controlling legal principles, then apply them to the facts of this case.

1. *The licensure requirements embody a legislative scheme aimed at protecting the public against unscrupulous and incompetent contractors.*

■ Since its adoption in 1939, the CSLL "has declared that, except as expressly otherwise provided, a contractor may not sue to collect compensation for performance of 'any act or contract' requiring a license without alleging that he or she was duly licensed 'at all times during the performance of that act or contract.' " (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 425 [30 Cal.Rptr.3d 755, 115 P.3d 41] (*MW Erectors*), citing § 7031, subd. (a) and Stats. 1939, ch. 37, § 1, p. 381.) "[T]he bar extends to actions 'in law or equity' and applies 'regardless of the merits of the cause of action.' [Citation.]" (*MW Erectors*, at p. 425.)

■ The CSLL embodies a comprehensive legislative scheme governing the construction business in California. It reflects a strong public policy, which favors protecting the public from unscrupulous and incompetent contractors. According to our Supreme Court, "The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services. [Citation.] The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. [Citations.]" (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995 [277 Cal.Rptr. 517, 803 P.2d 370] (*Hydrotech*); see also *Construction Financial v. Perlite Plastering Co.* (1997) 53 Cal.App.4th 170, 176–177 [61 Cal.Rptr.2d 574] (*Construction Financial*).) Section 7031, subdivision (a), applies "[r]egardless of the equities." (*Hydrotech, supra,* at p. 997.) For the past 50 years, it has been held that "courts may not resort to equitable considerations in defiance of section 7031." (*Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 152 [308 P.2d 713] (*Lewis & Queen*).) That is because the statute " ' "represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties . . . .*" ' [Citation.]" (*MW Erectors, supra,* 36 Cal.4th at p. 423.)

■ Section 7031, subdivision (a) requires all persons engaged in the business or acting in the capacity of a contractor to be licensed. A contractor is defined as "any person who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does

himself or herself or by or through others, construct, alter, repair, add to, subtract from, [or] improve . . . any building . . . or other structure, project, development or improvement, or to do any part thereof . . . , whether or not the performance of work . . . involves the addition to, or fabrication into, any . . . project . . . of any material or article of merchandise. 'Contractor' includes subcontractor and specialty contractor." (§ 7026.) "Persons" engaged in the business or acting in the capacity of a contractor is broadly defined to include "an individual, a firm, copartnership, corporation, association or other organization, or any combination of any thereof." (§ 7025.) ■ A corporation applying for a contractor's license must qualify through either a "Responsible Managing Officer" (RMO) or "Responsible Managing Employee" (RME), who is him- or herself eligible for the same license qualification. (§ 7068, subd. (b)(3).) The "qualifier" RMO or RME must be a bona fide officer or employee of the corporation and actively engaged in work encompassed by the license. (§ 7068, subd. (d).)

■ Section 7031, subdivision (a) is the primary enforcement mechanism for the CSLL. It provides: "Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person . . . ." (§ 7031, subd. (a).) If licensure is controverted, the plaintiff must prove, by producing a verified certificate of licensure from the Contractors' State License Board (the Board), that it held all necessary licenses during performance of the work. (§ 7031, subd. (d).)

■ Section 7031, subdivision (e), provides the sole exception to the contractor's licensure requirements. It permits a court to find there has been "substantial compliance" with the licensure requirements "if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, (3) [and] did not know or reasonably should not have known that he or she was not duly licensed . . . ." (*Ibid.*) (The statute was amended in 2003; those changes, not relevant here, were nonsubstantive and declarative of existing law. See Stats. 2003, ch. 289, § 2.)

The trend in changes to section 7031 over many years has been to severely limit the doctrine of substantial compliance; it only applies if all three requirements of subdivision (e) are met. (*Construction Financial, supra*, 53 Cal.App.4th at pp. 180, 182–183 [reviewing legislative history of § 7031]; see also *Pacific Custom Pools, Inc. v. Turner Construction Co.* (2000) 79 Cal.App.4th 1254, 1261–1262 [94 Cal.Rptr.2d 756] [trend of legislative changes has been to narrow available exceptions to § 7031's bar on actions by unlicensed contractors].) The statutory policy embodied in the CSLL is intended "to discourage persons who have failed to comply with the licensing law from offering or providing their unlicensed services for pay." (*Hydrotech, supra*, 52 Cal.3d at p. 995.) "Because of the strength and clarity of this policy," the Supreme Court has observed "section 7031 applies despite injustice to the unlicensed contractor. 'Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties*, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state. [Citation.] . . .' [Citations.]" (*Ibid.*) Thus, the issue is not whether WSS performed services under the contract for which it should be paid. Rather, the dispositive issues are whether WSS was required to be licensed during its performance of the subcontract or, if so, whether it may invoke the doctrine of substantial compliance.

2. *Application of legal principles to this case—Section 7031 bars WSS's recovery because the corporation was not properly licensed during performance of the contract.*

　　a. *WSS performed work before it was licensed.*

In this action, WSS, the corporation, entered into a subcontract with Great West. WSS was thus the "person" engaging in the business or acting in the capacity of a contractor. Accordingly, once licensure was controverted, it was WSS's obligation to prove the corporation was properly licensed at all times during performance of the act or contract at issue. (§ 7031, subd. (d).)[5] It failed to do so.

---

[5] We decline WSS's invitation to ignore the licensure argument because the issue was not raised until the middle of trial. As required by statute, the issue was fully vetted at a special evidentiary hearing. Moreover, the defense of illegality under section 7031 may be raised any time, even as late as on appeal. (*Lewis & Queen, supra*, 48 Cal.2d at pp. 148–149.)

WSS was incorporated in April 1999. The corporation applied for a contractor's license on August 20, 2001, and submitted its bid proposal to Great West on August 28, 2001.[6] On December 1, 2001, WSS executed the subcontract, which incorporated its bid proposal. WSS agreed to "obtain necessary licenses prior to starting work," and to "comply with all laws, rules, ordinances, and regulations of all governing bodies having jurisdiction over the work." WSS did not obtain its contractor's license until December 21, 2001. WSS's license expressly states it "did not exist before that date." WSS inserted its contractor's license number and returned the subcontract to Great West in early January 2001. Great West signed the document on January 2, 2002.

Meanwhile, on October 10, 2001, WSS notified the state (the owner of the project) it intended to begin work on the project within 20 days. That notice was required so the corporation could be paid for its work. On October 29, 2001, WSS sent Great West an invoice for $15,000 for initial preparation of "shop drawings." Ramirez testified the invoice was for work to be completed by the corporation by October 31, 2001. WSS submitted a second invoice for $11,000 on December 19, 2001, "for work completed to date," which included $9,000 for shop drawings and $2,000 for specialized anchor bolts WSS ordered and had delivered to the project. Ramirez testified that ordering materials—such as anchor bolts—was included in WSS's subcontract. He also testified he knew licensure was required for preparation of shop drawings, and that he knew WSS did not have its contractor's license when it submitted its first two invoices. WSS sent Great West a third invoice on December 25, 2001. That invoice sought payment for about $192,000 worth of materials, including 40 percent each of the Canopies/Steel and Tube Steel Columns/Steel, 80 percent of the Canopies/Galvanize and 100 percent of the Rolling Tube Steel. Each of these items was included in WSS's bid proposal. The December 25 invoice included work WSS expected to complete and have inspected by December 31, 2001.[7]

---

[6] In its bid, WSS proposed to perform the following services:
"1. Fabricate and Install Canopies 1, 2, 3, 4, 5, 6, 7;
"2. Qty. 7 Canopies to be Galvanized;
"3. Anchor Bolts with Templates F.O.B.;
"4. 4x4x3/16 T.S. Columns with Grey Primer;
"5. Qty. 3 Roof Access Ladders;
"6. 4"x6"x15 lbs per ft. Galv. Chain;
"7. Shop Drawings."

[7] Great West argues convincingly that it was not possible for all the work WSS invoiced on December 25, 2001, to have been done between the date WSS received its license and year end. That is because, according to Ramirez, it can take five days to several weeks to galvanize steel, depending on the time of year. Galvanization and fabrication of steel are independent processes. WSS does not do the galvanization; it hires a third party vendor to perform that process, which must be done before WSS can fabricate the steel. WSS was closed for business

WSS was not duly licensed at all relevant times. WSS was unlicensed when it submitted its first two invoices for work performed to date, and remained so until December 21, 2001. Because WSS was unlicensed during some period in which it performed work under the contract, it is barred from maintaining this action if *any* of the work it did required licensure, or unless it can bring itself within the statutory exception for substantial compliance, an issue to which we shall return.

First, we address WSS's contentions that licensure was not required for any of the work it did before December 21, 2001. WSS is mistaken.

> (i) *WSS may not segregate "acts" performed in furtherance of the contract.*

First, WSS insists it is entitled to recovery because the discrete tasks of ordering anchor bolts and preparing shop drawings do not constitute performance and can be segregated from the subcontract.

A strikingly similar attempt by an unlicensed contractor to segregate certain tasks from an integrated contract to avoid the bar of section 7031 was rejected in *Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035 [36 Cal.Rptr.3d 532] (*Banis*). In *Banis*, an unlicensed entity sought to recover for "design services" for a restaurant and market construction project that included preparing electrical and plumbing drawings and specifications, coordination with architects and engineers, and procurement of equipment and materials. (*Id.* at p. 1040.) In an attempt to avoid section 7031, the plaintiff argued it had not acted as a contractor in providing design services or, alternatively, that the contract could be segregated into discrete tasks. (*Banis, supra*, 134 Cal.App.4th at p. 1046.) The court rejected the plaintiff's attempt to parse the contract and concluded the services and materials the plaintiff provided were fixtures intended to be and actually physically incorporated into the project. (*Id.* at pp. 1045–1047.) In language equally applicable here, the court stated the design plans reflected "coordination of the

on December 25, 2001. There were only four business days between the time the license was issued on December 21 and December 31, 2001, during which time WSS claimed it purchased these materials and had them galvanized. Great West asserts that, if WSS actually waited until its license issued to order and have the steel galvanized, there was insufficient time for it to have completed the work invoiced on December 25, and logic dictates some tasks invoiced that date were performed prior to licensure. WSS insists the tasks for which Great West was billed on December 25 were performed after it received its license. This dispute is immaterial; if WSS was not licensed at all relevant times, it may not recover for any work it performed under the contract if the work required licensure, unless it can avail itself of the statutory substantial compliance exception. Leaving the third invoice aside, there is no dispute WSS performed work (prepared shop drawings and ordered materials) prior to December 21, 2001. The only question is whether a license was required to perform those tasks.

architect . . . and . . . engineers. Through its own efforts and those of others, plaintiff thereby undertook to 'construct,' 'alter,' 'add to,' 'subtract from,' and/or 'improve' defendant's project. (See § 7026.) In short, plaintiff was a contractor, and section 7031 bars plaintiff's suit for compensation." (*Banis, supra*, 134 Cal.App.4th at p. 1044.) The court rejected the plaintiff's attempt to parse the contract into discrete tasks, only some of which required licensure. The contract was not severable because "each aspect of plaintiff's work was integral to the restaurant project, and was not minor or incidental," but "part of an integrated whole." (*Id.* at p. 1047.) The same reasoning applies here. As Ramirez himself acknowledged at trial, the shop drawings he prepared while WSS remained unlicensed were tasks for which the corporation bid and which were performed in furtherance of the scope of the work included in the subcontract. Those tasks cannot be severed from the parties' integrated agreement to avoid section 7031's bar to recovery.

■ We also find no merit in WSS's assertion that the ordering of bolts and preparation of shop drawings for which it had bid could not have been tasks done "in performance of" the subcontract because the subcontract did not exist until it was executed by Great West in January 2002, by which time WSS was licensed. Section 7031 applies not only to formal agreements, but governs "any *act* or contract for which a license is required." (Italics added.) The Legislature's inclusion of the word "acts" was intended to broaden the statute's reach. (*MW Erectors, supra*, 36 Cal.4th at p. 427.) The statute applies whether or not a party is operating under an executed contract when performing tasks that require licensure. "The CSLL does not require contractors to operate exclusively by formal contract; it simply seeks to deter them from offering or performing unlicensed *services* for pay. . . . [¶] . . . [O]ne may not avoid the all-or-nothing bar against recovery for unlicensed services simply because there is no formal contract. In other words, one may not recover compensation for . . . any '*act*' requiring a license unless duly licensed 'at all times *during the performance of that act*' [citation]." (*Id.* at pp. 427–428, italics added & omitted.)

### (ii) *Licensure required to prepare drawings and order materials.*

WSS also argues, and the trial court agreed, the drafting of shop drawings and ordering of anchor bolts was not work performed under the contract, but prefatory tasks for which the corporation was not required to be licensed. WSS is mistaken.

■ WSS prepared shop drawings detailing the steel work it intended to perform on the project and specifying "how [it was] going to build the canopies," and submitted those drawings to the project architects and engineers for approval. A contractor includes one who, like WSS, "offers to

undertake . . . or purports to have the capacity . . . or submits a bid" to do specific acts defined by statute as work engaged in by a contractor, including the construction, alteration or repair of any part of any building, structure or project. (§ 7026.) Shop plans constitute such an offer or bid. Through them WSS purported to possess the capacity to undertake the steel work and construction it proposed to perform on the project within the meaning of section 7026, and thus was acting as a contractor. WSS was required to possess a contractor's license when it submitted its shop plans specifying the scope of the structural steel construction it intended to perform on a public works project. (See §§ 6737.3 [exempting *licensed* contractors from requirements applicable to civil engineers for, among other things, designing structures for work the contractor is to perform and supervise, in accordance with construction industry standards and codes and within his or her license classification, and for the *preparation of shop* or field *drawings for work he or she has contracted to perform*], 6731 [defining scope of civil engineering].) The public has a right to expect the party designing such plans—the improper implementation of which could have serious consequences at a school for deaf children—will, at a minimum, have the qualifications required and to possess a valid contractor's license.

■ The same logic negates WSS's assertion it was not required to be licensed to order materials meant to be incorporated in the ultimate construction, or because it did not perform the steel galvanization itself, but coordinated and oversaw that process which was actually performed by a third party vendor. "Section 7026 plainly states that both the person who provides construction services himself and one who does so 'through others' qualifies as a 'contractor.' The California courts have also long held that those who enter into construction contracts must be licensed, even when they themselves do not do the actual work under the contract. [Citations.] Indeed, if this were not the rule, the requirement that general contractors be licensed would be completely superfluous." (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 941 [29 Cal.Rptr.2d 669].) The reason contractors must be licensed even if they hire subcontractors to do the actual work is so that the public is protected " 'against persons who are unqualified to perform the required work.' " (*Currie v. Stolowitz* (1959) 169 Cal.App.2d 810, 814–815 [338 P.2d 208].) The same reasoning governs the services subcontractor WSS provided in ordering and overseeing the preparation of materials ultimately intended to be incorporated in the project, i.e., to become "part of an integrated whole." (*Banis, supra,* 134 Cal.App.4th at p. 1047.)

Because WSS was unlicensed during a period in which it performed work under the contract for which a contractor's license is required, it is barred from any recovery unless it can bring itself within the statutory exception for substantial compliance, an issue to which we now turn.

b. *WSS has not made a sufficient showing of substantial compliance; it was not licensed before December 21, 2001, and may not rely on the license history of another individual or entity.*

WSS contends it substantially complied with the licensing requirements because, as the corporation's RMO, Ramirez previously qualified a WSS partnership for a contractor's license and held various individual contractor licenses of his own at all times before and after the corporation obtained its license.[8] WSS has not made a sufficient showing of substantial compliance. The contract at issue was between Great West and WSS, the corporation, the entity which bid the project and the only entity to have performed work for which recovery was sought in this action, not WSS, the partnership or Ramirez as an individual. WSS was incorporated for almost two years before it applied for a contractor's license in August 2001. Unequivocal evidence at trial showed the sole license held by the corporation "was issued 12/21/2001 and did not exist before that date." The WSS partnership license was not—and could not have been—transferred or reissued to WSS, the corporation. (See § 7075.1, subd. (a) ["No license . . . shall be transferable to any other person or entity under any circumstances."].)[9] The licensing history of the partnership and Ramirez are not relevant to the WSS corporate license history.

Nor is the fact that Ramirez was the qualifier for the partnership, an unrelated entity, relevant to the corporation's license history. WSS's reliance on *Asdourian v. Araj* (1985) 38 Cal.3d 276 [211 Cal.Rptr. 703, 696 P.2d 95] (*Asdourian*), is misplaced. *Asdourian* no longer states the law.

---

[8] Ramirez was the qualifier for licenses issued to a WSS Partnership and its predecessor partnership, RAM Welding. When WSS, the corporation, was formed in 1999, Ramirez was informed by the Board he was not eligible to qualify for a license for the corporation without first disassociating from WSS partnership, which he did. Ramirez also held valid individual licenses. Ramirez's individual licenses and the WSS partnership's license were in effect when the corporation bid the project in August 2001. Ramirez submitted a notice of disassociation to the Board in mid-November 2001, with an effective date of December 1, 2001. WSS contends it acted in good faith and substantially complied with section 7031, because it believed the corporation's license would be issued contemporaneously with cancellation of the partnership's license. In any event, WSS insists there was only a short "gap" in licensure between the time Ramirez disassociated from the partnership as a condition of the issuance of WSS's corporate license. Compelling as these facts may be, they do not satisfy the rigid statutory requirements for substantial compliance. There was no "gap" in licensure. WSS was never licensed before December 21, 2001. It is irrelevant that WSS, a partnership and unrelated entity, once held a license, that Ramirez was the qualifier for both the partnership and the corporation, or that Ramirez held valid individual licenses at all times.

[9] A license number may be reissued or reassigned to a corporation under limited circumstances, none of which obtain here. (See § 7075.1, subd. (c)(1), (3) & (4).)

In *Asdourian,* a contractor failed to obtain a license in his own name. He had planned to conduct business as a sole proprietor under a fictitious name, and obtained a license in that name. Because he lacked a license, the plaintiff was out of compliance with the law. If strict compliance with section 7031 was required, he could not maintain an action for damages. Applying the judicial doctrine of substantial compliance, and noting that, as here, the purposes of the CSLL were satisfied (the contractor was qualified for licensure and supervised the work), the court concluded the defendant "should not be able to avoid his obligation to compensate plaintiff for the work he performed." (*Asdourian, supra,* 38 Cal.3d at p. 285.)

The court traced the judicial doctrine of substantial compliance back to its earlier decisions, *Gatti v. Highland Park Builders, Inc.* (1946) 27 Cal.2d 687 [166 P.2d 265] (*Gatti*) and *Latipac, Inc. v. Superior Court* (1966) 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564] (*Latipac*), on which WSS also relies. The court noted that, " '[f]or nearly three decades [it had] developed and applied to cases arising under section 7031 the doctrine of "substantial compliance"; during that entire period the Legislature [had] indicated no hint of disapproval of this construction.' " (*Asdourian, supra,* 38 Cal.3d at p. 287, quoting *Latipac, supra,* at p. 281.) Indeed, by the time *Asdourian* was decided that time had been extended another 19 years, and the statute had even been amended in 1961 to make the exception recognized in *Gatti* explicit. (Stats. 1961, ch. 1325, § 1, p. 3105; see *Asdourian, supra,* 38 Cal.3d at p. 284, fn. 6.)

However, *Asdourian, Gatti,* and *Latipac* are no longer the law. In 1989, the Legislature added subdivision (d) (now subdivision (e)) to section 7031 expressly repudiating the judicial doctrine of substantial compliance. That subdivision provides "The judicial doctrine of substantial compliance shall not apply under this section where the person who engaged in the business or acted in the capacity of a contractor has never been a duly licensed contractor in this state." (*Id.,* subd. (e).) "Person" is broadly defined to include corporations. (§ 7025.) The sole exception to the subdivision permits a court to find substantial compliance with the statutory requirements if the person whose licensure is challenged can show it was properly licensed as a state contractor sometime before performance of the act or contract, reasonably and in good faith attempted to maintain licensure, and did not know or reasonably should not have known it was no longer licensed. (§ 7031, subd. (e).) The intent and effect of this legislative change was to severely limit the doctrine of substantial compliance; it *only* applies if all three elements of subdivision (e) are satisfied. (*Construction Financial, supra,* 53 Cal.App.4th at p. 180.)

 WSS, the corporate entity or "person" engaged in the business, which acted in the capacity of contractor, does not and cannot argue *it* was ever licensed as a contractor or held that status at a time that preceded its performance in this case. The substantial compliance doctrine is unavailable to a contractor who has not been duly licensed at some point before beginning performance of the contract. (*MW Erectors, supra*, 36 Cal.4th at p. 419; see also *General Ins. Co. v. Superior Court* (1972) 26 Cal.App.3d 176, 184 [102 Cal.Rptr. 541] [precluding unlicensed corporation from recovery even though its sole shareholder was at all times licensed because, to find substantial compliance under the circumstances "would emasculate the statutory language and nullify [section 7031's] purpose . . . ."]; see also *Opp v. St. Paul Fire & Marine Ins. Co.* (2007) 154 Cal.App.4th 71, 79 [64 Cal.Rptr.3d 260] [unlicensed corporate contractor may not enforce contract on the basis of an individual employee's license].) There is no legitimate basis for applying the doctrine of substantial compliance.

 We are cognizant of the harshness of this result. But the law is clear. If the bar of section 7031 applies, it applies regardless of equitable considerations. As discussed above, the Supreme Court has determined the statute " 'represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties*, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state. [Citation.] . . .' [Citations.]" (*Hydrotech, supra*, 52 Cal.3d at p. 995.) We are bound by this reasoning. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) WSS was never licensed before it commenced work under the subcontract. That lack of prior licensure precludes application of the statutory substantial compliance exception. Thus, irrespective of Ramirez's good faith, competence and his or the WSS partnership's prior license history, section 7031 bars the corporation from maintaining this action. The trial court erred in denying nonsuit.

### 3. *Remaining issues not reached.*

In view of the discussion above, it is unnecessary to address whether WSS acted in good faith, whether the court erred in permitting WSS's expert to testify as to certain matters, whether the damages award was excessive, or any other issues.

## DISPOSITION

The judgment is reversed. The matter is remanded with instructions to the trial court to vacate the judgment and enter judgment in favor of Great West and Fidelity. Great West and Fidelity shall recover their costs in this proceeding. (Cal. Rules of Court, rule 8.276(a)(1), (2).)

Rubin, J., and Flier, J., concurred.