[Nos. A130272, A130694. First Dist., Div. Two. Mar. 28, 2012.]

MONTGOMERY SANSOME LP, Plaintiff and Appellant, v.
ZHIAN Z. REZAI, Individually and as Trustee, etc., et al., Defendants and
Respondents.

---

**COUNSEL**

Ropers, Majeski, Kohn & Bentley, Susan H. Handelman and Terry Anastassiou for Plaintiff and Appellant.

Johns & Allyn, Christopher Johns and Burton C. Allyn IV for Defendants and Respondents.

---

**OPINION**

**HAERLE, Acting P. J.—**

## I. INTRODUCTION

Plaintiff and appellant Montgomery Sansome LP (plaintiff), a limited partnership, appeals after the trial court granted summary judgment in favor of defendants and respondents Zhian Z. Rezai and Jacklyn J. Rezai (individually and as trustees of the Zhian Z. Rezai and Jacklyn Jordan Rezai Revocable Trust) (collectively, defendants) on plaintiff's complaint seeking payment for repair work performed at a building owned by defendants. The trial court ruled that, under Business and Professions Code section 7031,[1] plaintiff could not recover from defendants because the business entity that contracted with defendants was Montgomery Sansome Ltd. LP, a general partnership that did not have a contractor's license. In two appeals, which we consolidated pursuant to the parties' stipulation, plaintiff challenges (1) the judgment and a subsequent order denying a new trial (No. A130272) and (2) the court's award of attorney fees to defendants (No. A130694). Because we conclude summary judgment was erroneously granted, we reverse the judgment and the fee award.

---

[1] All statutory references are to the Business and Professions Code unless otherwise stated.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. *The Montgomery Sansome Business Filings*

On July 25, 1997, Leonard Nordeman filed a certificate of limited partnership for "Montgomery-Sansome, LP," with the California Secretary of State. The certificate names Nordeman as a general partner. The certificate lists the limited partnership's office address as 755 Prairie Creek Drive in Pacifica. In 2002, an amendment added Catherine Diane Magee and Deborah V. Fico as general partners.

On October 22, 1997, the Contractors' State License Board (CSLB) issued license No. 741713 to "Montgomery Sansome LTD." The license application states that this entity is a "partnership," and lists Nordeman as a general partner and Magee and Fico as limited partners. The application lists Nordeman as the "qualifying individual" for the limited partnership. The application lists as the partnership's business address the same Pacifica address that was listed on the certificate of limited partnership discussed above. A renewal application filed in 2007 also lists "Montgomery Sansome LTD" as the licensed entity; it identifies Nordeman as the "qualifying partner" and Magee and Fico as limited partners. The renewal application lists the partnership's address as 305 Adrian Road in Millbrae. A May 2010 printout of a CSLB record identifies the licensed entity as "Montgomery Sansome LP," and lists the same Millbrae address. The parties agree that the entity holding license No. 741713 was and is a limited partnership.

On February 20, 2008, Nordeman, Magee and Fico filed a fictitious business name statement (FBN statement) in San Mateo County, listing the fictitious business name "MONTGOMERY SANSOME LTD., L.P." The FBN statement states: "This business is conducted by *General Partnership*." The statement lists the same Millbrae business address as used for the limited partnership in the more recent CSLB records. The FBN statement, although filed in 2008, states: "The registrant commenced to transact business under the FBN or names on *10/22/97*." As noted above, October 22, 1997, is the same date on which the CSLB issued license No. 741713 to "Montgomery Sansome LTD"; the certificate of limited partnership for "Montgomery-Sansome, LP" was also issued in 1997. Nordeman signed the FBN statement and declared all information in it to be true.

B. *The Contract*

On February 4, 2008, defendants hired "Montgomery Sansome Ltd. Lp." to perform repairs at an apartment building they owned (the property). On that date, and again on March 6, 2008, the parties executed work orders (collectively, the contract) with the name "Montgomery Sansome Ltd. Lp." printed

at the top. The work orders list contractor's license No. 741713 and the Adrian Road address in Millbrae. Each work order includes an attorney fee provision stating: "In the event of legal action to enforce any of the terms of this agreement, owner agrees to pay all costs incurred by Montgomery Sansome involved in the legal process, including reasonable attorney fees, process serving costs, any and all testimony for which Montgomery Sansome may be required to pay."

In April 2008, defendants terminated the contract. Prior to doing so, they made payments totaling $65,000.

## C. *The Complaints Against Defendants*

In July 2008, "Montgomery Sansome Ltd. L.P." recorded a mechanic's lien against the property. In August 2008, Nordeman filed an action (the Nordeman action) to foreclose the mechanic's lien and for other relief, alleging defendants had failed to pay $203,061.67 owed for work performed at the property. The complaint stated it was filed by "LEONARD NORDEMAN, individually and d.b.a. MONTGOMERY SANSOME LTD., LP." The complaint alleged that "MONTGOMERY SANSOME LTD., LP." is a limited partnership. The complaint asserted causes of action for breach of contract, foreclosure of mechanic's lien, common counts and fraud. On June 29, 2009, Nordeman voluntarily dismissed the action without prejudice; "Montgomery Sansome Ltd. L.P." subsequently released the mechanic's lien.

Also on June 29, 2009, plaintiff (Montgomery Sansome LP) filed the complaint in this action. The complaint (like the one in the Nordeman action) alleges that defendants failed to pay $203,061.67 for work performed at the property. Plaintiff's complaint asserts the same causes of action as the Nordeman complaint (breach of contract, foreclosure of mechanic's lien, common counts and fraud), and adds a cause of action for imposition of constructive trust.[2]

## D. *Defendants' Motion for Summary Judgment*

Defendants moved for summary judgment, arguing that plaintiff (Montgomery Sansome LP) was not the real party in interest and lacked standing to sue, because it was not a party to the contract. Defendants also contended that section 7031, which precludes compensation for unlicensed contracting work, barred plaintiff's claims.

In support of the motion, defendants submitted a declaration of Zhian Rezai, attaching the work orders and related documents. Defendants also

---

[2] Defendants filed a cross-complaint, which they later dismissed with prejudice.

submitted an attorney declaration attaching the Montgomery Sansome business filings discussed above, including (1) a certified copy of the certificate of limited partnership for "Montgomery-Sansome, LP," (2) certified copies of CSLB records, showing issuance of license No. 741713 to "Montgomery Sansome LTD" (as well as an uncertified 2010 document showing "Montgomery Sansome LP" as the licensee), and (3) a certified copy of the FBN statement for "MONTGOMERY SANSOME LTD., L.P."

In opposition, plaintiff contended that it held a valid contractor's license, and that differences in the names used on various documents were not significant. Plaintiff submitted a declaration from its attorney, attaching (1) documents that he stated had been obtained from the CSLB, pertaining to license No. 741713, and (2) documents that he stated had been obtained from the California Secretary of State, pertaining to the limited partnership. Plaintiff did not submit any other evidence or declarations. Plaintiff submitted no evidence contradicting the information in the FBN statement for "MONTGOMERY SANSOME LTD., L.P."

Defendants objected, on grounds of hearsay and lack of proper authentication and foundation, to most of the substantive portions of plaintiff's attorney's declaration, and to all the attached exhibits. The court sustained the objections and excluded the evidence.

After hearing argument, the trial court granted defendants' summary judgment motion pursuant to section 7031. The court stated that the undisputed evidence showed: (1) "Montgomery Sansome Ltd. LP was the party that entered into the contracts"; (2) "Montgomery Sansome Ltd. LP (through Nordeman) filed a fictitious business name statement with the San Mateo County Clerk"; (3) "The fictitious business name statement lists Montgomery Sansome Ltd. LP as a general partnership"; (4) "Montgomery Sansome Ltd. LP recorded the mechanics' lien"; and (5) "Montgomery Sansome Ltd. LP never had a contractors' license."

The court entered judgment for defendants. The court later amended the judgment to add an award of costs to defendants.

E. *Plaintiff's Motion for New Trial*

Plaintiff moved for a new trial, arguing that Nordeman was operating a single business entity that held a valid contractor's license. Plaintiff submitted a declaration from Nordeman, purporting to authenticate two of the exhibits the court had excluded when ruling on summary judgment. Defendants objected to Nordeman's declaration as untimely. After hearing argument, the court sustained defendants' evidentiary objections and denied the new trial motion.

Plaintiff appealed the judgment and the new trial order.

### F. Defendants' Motion for Attorney Fees

Defendants filed a motion for attorney fees, based on the fee provision in the contract and Civil Code section 1717.[3] Defendants requested a total of $127,616.90 in fees, which included $15,567.50 incurred in defending the Nordeman action. After hearing argument, the court awarded fees in the amount requested by defendants.

Plaintiff appealed the fee award.

## III. DISCUSSION

### A. Summary Judgment

#### 1. Standard of Review

The standard of review for an order granting or denying summary judgment is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) Similarly, to the extent a subsequent order denying a new trial "relies on the resolution of a question of law, including the nonexistence of triable issues of fact, we examine the matter de novo." (*Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1176 [80 Cal.Rptr.3d 6].) The trial court's stated reasons for granting summary relief are not binding on the reviewing court, which reviews the trial court's ruling, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878 [116 Cal.Rptr.2d 158].)

A party moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar, supra,* 25 Cal.4th at p. 850, fn. omitted.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid.,* fn. omitted.) "A defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Ibid.*)

---

[3] Civil Code section 1717, subdivision (a), provides in part that, "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. . . ."

Generally, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (*Aguilar, supra,* 25 Cal.4th at pp. 850–851.) If the moving party does not meet its initial burden of production, the opposing party has no burden to produce evidence of its own. (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 468 [110 Cal.Rptr.2d 627].)

On appeal, in determining whether the parties have met their respective burdens, we consider "all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports."[4] (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].) We view the evidence in the light most favorable to plaintiff as the party opposing summary judgment, strictly scrutinizing defendants' evidence in order to resolve any evidentiary doubts or ambiguities in plaintiff's favor. (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64 [74 Cal.Rptr.3d 108, 179 P.3d 905].)

### 2. *The Statutory Framework*

■ Section 7031, subdivision (a) (section 7031(a)), a provision of the Contractors' State License Law (CSLL) (§ 7000 et seq.), generally prohibits unlicensed contractors from recovering compensation for performance of work requiring a license. Section 7031(a) states: "Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person . . . ." If licensure is controverted, the plaintiff must prove, by producing a verified certificate of licensure from the CSLB, that it held all necessary licenses during performance of the work. (§ 7031, subd. (d).)

"The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services.

---

[4] On appeal, plaintiff does not contend the trial court erred in excluding the evidence plaintiff proffered in connection with the summary judgment and new trial proceedings. We therefore do not consider that evidence.

[Citation.] The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. [Citations.] [¶] Section 7031 advances this purpose by withholding judicial aid from those who seek compensation for unlicensed contract work. The obvious statutory intent is to discourage persons who have failed to comply with the licensing law from offering or providing their unlicensed services for pay." (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995 [277 Cal.Rptr. 517, 803 P.2d 370] (*Hydrotech*).)

" 'Because of the strength and clarity of this policy' [citation], the bar of section 7031(a) applies '[r]egardless of the equities.' [Citation.] Indeed, it has long been settled that 'the courts may not resort to equitable considerations in defiance of section 7031.' [Citation.] ' "Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties*, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state. [Citation.] . . ." ' [Citation.]" (*MW Erectors, Inc. v. Niederhauser Ornamental and Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 423 [30 Cal.Rptr.3d 755, 115 P.3d 41].)

California courts previously applied a judicial doctrine of "substantial compliance," under which "a contractor was not barred from a just recovery if his licensure was defective *only in form* and the defendant had received the 'full measure' of protection intended by the Legislature." (*Hydrotech, supra,* 52 Cal.3d at pp. 995–996; see *Asdourian v. Araj* (1985) 38 Cal.3d 276, 282–283 [211 Cal.Rptr. 703, 696 P.2d 95]; *Pacific Custom Pools, Inc. v. Turner Construction Co.* (2000) 79 Cal.App.4th 1254, 1261 [94 Cal.Rptr.2d 756].) The Legislature has since amended section 7031 to narrow the doctrine of substantial compliance. Section 7031, subdivision (e), provides that "[t]he judicial doctrine of substantial compliance shall not apply under this section where the person who engaged in the business or acted in the capacity of a contractor has never been a duly licensed contractor in this state." A contractor that was licensed prior to performance of the act or contract in question may, however, show substantial compliance in specified circumstances.[5] (§ 7031, subd. (e); see *WSS Industrial Construction, Inc. v. Great West Contractors, Inc.* (2008) 162 Cal.App.4th 581, 589 [76 Cal.Rptr.3d 8]

---

[5] A court may find "substantial compliance" with the licensure requirements "if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, (3) did not know or reasonably should not have known that he or she was not duly licensed when

(*WSS*); *Pacific Custom Pools, Inc. v. Turner Construction Co., supra*, 79 Cal.App.4th at pp. 1261–1262.)

### 3. *Defendants Are Not Entitled to Summary Judgment*

■ In granting summary judgment, the trial court held that section 7031 applied because the entity that contracted with defendants—Montgomery Sansome Ltd. LP—did not have a contractor's license. We conclude that triable issues of material fact exist as to whether the contracting entity was a separate entity from the licensed Montgomery Sansome entity, and that the trial court therefore erred by granting summary judgment.

#### a. *The Parties' Contentions and Applicable Case Law*

Defendants contend that Montgomery Sansome Ltd. LP is a general partnership and a separate legal entity from the limited partnership that held CSLB license No. 741713 (referred to in CSLB records as Montgomery Sansome LTD and Montgomery Sansome LP). The cases cited by the trial court in its summary judgment order—*Opp v. St. Paul Fire & Marine Ins. Co.* (2007) 154 Cal.App.4th 71 [64 Cal.Rptr.3d 260] (*Opp*), and *WSS, supra*, 162 Cal.App.4th 581 (which defendants also cite in their brief)—establish that, under section 7031(a), if an individual or entity without a required license is engaged in the business or acting in the capacity of a contractor, a license held by a different individual or entity does not permit the unlicensed contractor to recover.

In *Opp*, an individual (Opp) held a contractor's license. (*Opp, supra*, 154 Cal.App.4th at p. 72.) Opp was also the president of a corporation, MCI, that did not hold a license. (*Ibid.*) Opp, as president of MCI, entered a subcontract and inserted his individual contractor's license number where the contract documents called for a license number. (*Id.* at pp. 72–73.) When MCI later sued for compensation under the subcontract, the trial court entered summary judgment for the defendant insurer, and the appellate court affirmed. (*Id.* at pp. 73, 74–76.) The court held that MCI was the contracting party and was unlicensed, and that MCI's claim therefore was barred by section 7031. (154 Cal.App.4th at pp. 74–76.) The court rejected Opp's argument that *he* should be permitted to recover because he " 'did the work' " on the construction project; the court held that, under section 7031, "[t]he issue . . . is not who 'did the work,' but who was 'engaged in the business or acting in the capacity of a contractor.' " (154 Cal.App.4th at pp. 74–75.) The court also rejected Opp's claim that the use of his individual contractor's license number on the contract documents could support a finding that he was a party to the

---

performance of the act or contract commenced, and (4) acted promptly and in good faith to reinstate his or her license upon learning it was invalid." (§ 7031, subd. (e).)

contract. (*Id.* at p. 76.) The court held that "it would render ineffective the contractor's license requirement and encourage fraud if insertion of the license number of one who is not the contractor permitted a suit that otherwise was barred by section 7031." (*Ibid.*)

Similarly, in *WSS*, the appellate court held that, under section 7031, a corporation could not recover under a subcontract because it performed a portion of the work before it obtained a license. (*WSS, supra*, 162 Cal.App.4th at pp. 586, 589–593.) It was irrelevant that the corporation's president and a WSS partnership had held valid licenses. (*Id.* at p. 594 & fn. 8.) The unlicensed corporation was the entity that entered the subcontract and "was thus the 'person' engaging in the business or acting in the capacity of a contractor." (*Id.* at pp. 589, 594.)

Plaintiff argues that the above cases do not apply because there is a single Montgomery Sansome business entity, and the slightly different names used in different documents are just "trivial" variations on the name for that single entity. Plaintiff relies on *Ball v. Steadfast-BLK* (2011) 196 Cal.App.4th 694 [126 Cal.Rptr.3d 743] (*Ball*), which was decided after the trial court ruled in this case. In *Ball*, an individual (Ball) received a license from the CSLB "as a 'Sole Owner,' i.e., an individual owner," under the fictitious business name " 'Clark Heating and Air Conditioning.' " (*Ball, supra*, 196 Cal.App.4th at pp. 697, 701, citing § 7065.) Ball later entered into contracts under the transposed business name " 'Clark Air Conditioning & Heating.' " (196 Cal.App.4th at pp. 697–698.) When Ball sued in his own name to foreclose a mechanic's lien arising from alleged nonpayment under the contracts, the trial court sustained a demurrer without leave to amend, holding that Ball was not licensed as a contractor to do business under the name of Clark Air Conditioning & Heating. (*Id.* at p. 699.)

The appellate court reversed, holding that the trial court had "confused the individual owner to whom the contractor's license was issued with the name under which the individual conducted his contracting business." (*Ball, supra*, 196 Cal.App.4th at p. 697.) As a sole proprietorship, Clark Heating and Air Conditioning was not a legal entity separate from its individual owner (Ball), and was "not among the categories of 'persons' defined by the CSLL to whom a contractor's license may issue." (*Id.* at p. 701.) Although the name "Clark Heating and Air Conditioning" appeared on the license, Ball was the licensee as the owner of Clark Heating and Air Conditioning. (*Ibid.*) Similarly, when Ball later entered into contracts using the fictitious business name Clark Air Conditioning & Heating, Ball was the contracting party; Clark Air Conditioning & Heating (like Clark Heating and Air Conditioning) was legally indistinguishable from Ball. (*Ibid.*) Because Ball was the contracting party and was licensed, section 7031 did not bar his claim. (196 Cal.App.4th at

pp. 701–702.) The *Ball* court distinguished *Opp*, stating: "Here, unlike the plaintiff in *Opp*, Ball entered the contracts on behalf of his sole proprietorship, not on behalf of a separate legal entity that could, and should, have obtained its own license." (*Ball, supra*, 196 Cal.App.4th at p. 703.)

In accord with the result in *Ball* is *Handyman Connection of Sacramento, Inc. v. Sands* (2004) 123 Cal.App.4th 867, 886–887 [20 Cal.Rptr.3d 727], in which a corporation that held a contractor's license entered a contract under the shortened name "Handyman Connection," rather than the full name set forth on its license, "Handyman Connection of Sacramento, Inc." The appellate court held that, for purposes of disciplinary action under section 7117, the licensed entity's use of a shortened name was a mere technicality that did not amount to a violation. (123 Cal.App.4th at pp. 886–887.)

Under the above cases, a critical issue in determining whether section 7031 bars plaintiff's claims is whether the Montgomery Sansome entity that contracted with defendants is a general partnership and a separate legal entity from the licensed limited partnership. If it is, then, under *Opp* and *WSS*, any claims for compensation it had would be barred by section 7031; it is not relevant that a Montgomery Sansome limited partnership held a license or that the limited partnership's license number appeared on the contract. (See *Opp, supra*, 154 Cal.App.4th at pp. 72–76; *WSS, supra*, 162 Cal.App.4th at pp. 589, 594 & fn. 8.) Moreover, the limited partnership could not recover, because it is not the contracting party.[6] (*Opp, supra*, 154 Cal.App.4th at pp. 72–76.) On the other hand, if the entity that contracted with defendants is the same entity that held a license, then, under *Ball*, the use of slightly different names for that entity on different documents (Montgomery Sansome LP, Montgomery Sansome LTD, Montgomery Sansome Ltd. LP) would not bar its recovery under section 7031.[7] (See *Ball, supra*, 196 Cal.App.4th at pp. 697, 701–703.)

Accordingly, we next consider the evidence submitted in the trial court on the question of whether there are multiple Montgomery Sansome entities. In doing so, as noted above, we view the evidence in the light most favorable to plaintiff as the party opposing summary judgment, strictly scrutinizing

---

[6] If the contracting entity is a separate legal entity, it also could not invoke the substantial compliance doctrine, because there is no evidence in the record that it ever held a contractor's license. (See § 7031, subd. (e) [substantial compliance doctrine does not apply where the person who acted as a contractor was never licensed]; *WSS, supra*, 162 Cal.App.4th at pp. 594–596 [license histories of other entities are irrelevant].)

[7] Because section 7031 would not bar recovery, there would be no need to address the substantial compliance doctrine. (See *Ball, supra*, 196 Cal.App.4th at p. 704, fn. 8 [licensed individual's use of different business names did not bar recovery under § 7031, so court did not need to address substantial compliance doctrine].)

defendants' evidence in order to resolve any evidentiary doubts or ambiguities in plaintiff's favor. (*Johnson v. American Standard, Inc., supra,* 43 Cal.4th at p. 64.)

b. *The Evidentiary Record*

In seeking to meet their initial burden of production on the question of whether there are multiple Montgomery Sansome entities, defendants submitted evidence (records from the CSLB and the Secretary of State) showing that the licensed entity was a limited partnership (referred to in those records as Montgomery Sansome LTD or Montgomery Sansome LP). In support of their contention that the contracting entity (referred to in the contract as Montgomery Sansome Ltd. LP) was a general partnership and a separate entity, defendants rely solely on the FBN statement filed in February 2008. As noted above, the FBN statement lists the fictitious business name Montgomery Sansome Ltd. LP, and states: "This business is conducted by *General Partnership*." Defendants submitted no other evidence (such as a partnership agreement or other partnership records) showing the existence of a Montgomery Sansome general partnership. We thus turn to the evidentiary significance of the FBN statement.

■ We note initially that the use of a fictitious business name or the filing of an FBN statement does not itself *create* a separate entity. (See *Ball, supra,* 196 Cal.App.4th at p. 701; *Pinkerton's, Inc. v. Superior Court* (1996) 49 Cal.App.4th 1342, 1348 [57 Cal.Rptr.2d 356]; see also *In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1289, 1292–1293 [51 Cal.Rptr.3d 234] [FBN statement filed by husband stating he was doing business as a general partnership with wife did not show partnership was ever formed, where wife had no knowledge of alleged partnership].) However, under section 17926, a certified copy of an FBN statement (such as the one submitted in this case) raises a rebuttable presumption of the truth of the information required to be included in it, including the name and form of the business. Section 17926, subdivision (c), states that a certified copy of an FBN statement "establishes a rebuttable presumption of all of the following: [¶] (1) The existence of the original statement. [¶] (2) The execution of the statement by the person by whom it purports to have been executed. [¶] (3) The truth of the information required by Section[] 17913 . . . that is contained in the statement." In turn, section 17913 requires that an FBN statement include (1) the fictitious business name, (2) the business address, (3) the names of the registrants (e.g., the names of individual registrants, or the names of the general partners of a registrant that is a general or limited partnership), (4) the form of the business (such as individual, general partnership, limited partnership, or corporation),

and (5) the date on which the registrant began transacting business under the fictitious business name.[8] (§ 17913, subd. (b).)

The FBN statement in this case includes the information required by section 17913, including the fictitious business name (Montgomery Sansome Ltd. LP) and the form of the business (general partnership). Accordingly, under section 17926, subdivision (c), the certified copy of the FBN statement submitted by defendants raised a rebuttable presumption of the truth of that information. (§ 17926, subd. (c)(3).) Section 17926, subdivision (d), specifies that "[t]he presumptions established by [section 17926,] subdivision (c), are presumptions affecting the burden of producing evidence." As the Law Revision Commission comment following section 17926 notes, Evidence Code section 604 defines the scope of this type of presumption. (See Cal. Law Revision Com. com., 4E West's Ann. Bus. & Prof. Code (2008 ed.) foll. § 17926, p. 398.) Evidence Code section 604 states: "The effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption. Nothing in this section shall be construed to prevent the drawing of any inference that may be appropriate."

Applying this standard, we conclude that defendants were not entitled to summary judgment. The portions of the FBN statement relied on by defendants (the sections of the form specifying the fictitious business name and the form of the business) support defendants' argument that Montgomery Sansome Ltd. LP is a general partnership (and therefore a separate entity from the licensed Montgomery Sansome limited partnership). However, other evidence in the record "would support a finding" (Evid. Code, § 604) that the name Montgomery Sansome Ltd. LP on the FBN statement is not a reference to a separate entity but, instead, is a reference to the licensed entity.

First, other information in the FBN statement itself suggests that the term "Montgomery Sansome Ltd. LP" may be a reference to the licensed entity. As noted above, the FBN statement includes the same Millbrae business address as was used for the limited partnership in the more recent CSLB records. Moreover, the FBN statement, although filed in 2008, states that the registrant began transacting business under the fictitious business name on October 22, 1997, the same date on which the CSLB issued license No. 741713 to "Montgomery Sansome LTD," and the same year in which the certificate of

---

[8] A person who registers an FBN statement declaring as true any material matter he or she knows to be false is guilty of a misdemeanor. (§ 17913, subd. (c); *In re Marriage of Geraci, supra,* 144 Cal.App.4th at p. 1292, fn. 19.)

limited partnership was issued for "Montgomery-Sansome, LP." This information in the FBN statement (which, like the portions of the statement on which defendants rely, is rebuttably presumed to be true under § 17926), would support an inference that there is *only* one Montgomery Sansome partnership (established in 1997), with one business address, and that the reference to Montgomery Sansome Ltd. LP on the FBN statement (which apparently was completed by Nordeman, a layperson) is a reference to that entity.

Second, other documents in the record provide further support for a finding that, despite the discrepancies in the names used on different documents, there is just one Montgomery Sansome entity. The records of the CSLB and the Secretary of State use slightly different names to refer to what appears to be a single limited partnership, including "Montgomery-Sansome, LP," "Montgomery Sansome LTD" and "Montgomery Sansome LP." The CSLB records include documents using the same license number (741713) and the same Millbrae business address for both "Montgomery Sansome LTD" and "Montgomery Sansome LP." It thus appears that Nordeman (and others who may have completed some of the forms) were just inconsistent regarding the exact name they used to refer to this limited partnership. This evidence supports an inference that the use of another slightly different name on the FBN statement—Montgomery Sansome Ltd. LP—was also a reference to that same licensed entity, and that the designation of that entity as a general partnership, rather than a limited partnership, was a mistake.[9] The work orders also support an inference that there was a single entity, and that Nordeman just used inconsistent nomenclature for that entity. The work orders list the contracting party as Montgomery Sansome Ltd. LP (the name of what defendants claim is a general partnership), the Millbrae business address used on other documents, and license No. 741713 (held by the limited partnership).[10]

In sum, although the FBN statement raised a rebuttable presumption that Montgomery Sansome Ltd. LP is a general partnership (see § 17926, subds. (c)(3), (d)), the above evidence "would support a finding" (Evid. Code, § 604) that the name Montgomery Sansome Ltd. LP just refers to the licensed

---

[9] Although there is no record evidence showing a reason for such an error (if it was an error), plaintiff's counsel suggested at oral argument in this court that Nordeman, by stating on the FBN statement that the business was a general partnership, may have intended to convey that he (Nordeman) was a general partner in a limited partnership.

[10] As noted above, when a separate unlicensed entity acts as a contractor, it cannot escape the bar of section 7031 by inserting in a contract the license number of a licensed individual or entity. (*Opp, supra,* 154 Cal.App.4th at pp. 72–73, 76.) Here, however, in light of the inconsistent nomenclature in the various documents, the use of license No. 741713 in the contract seems quite relevant to the initial determination of whether or not there are multiple entities.

limited partnership, and that Nordeman did not actually form a separate general partnership.[11] Accordingly, "the trier of fact shall determine the existence or nonexistence of the presumed fact [(i.e., that Montgomery Sansome Ltd. LP is a general partnership and a separate entity from the licensed limited partnership)] from the evidence and without regard to the presumption." (Evid. Code, § 604; see Cal. Law Revision Com. com., 4E West's Ann. Bus. & Prof. Code, *supra*, foll. § 17926, p. 398.)

Because this issue is for the trier of fact, defendants did not meet their initial burden of production to "make a prima facie showing of the nonexistence of any triable issue of material fact," and the burden never shifted to plaintiff to produce evidence of its own.[12] (*Aguilar, supra*, 25 Cal.4th at pp. 850–851; see *Consumer Cause, Inc. v. SmileCare, supra*, 91 Cal.App.4th at p. 468.) The trial court therefore erred in granting summary judgment.[13]

B. *Attorney Fees*

█ The trial court awarded attorney fees to defendants under Civil Code section 1717. That statute authorizes an award of fees to "the party prevailing on the contract." (Civ. Code, § 1717, subd. (a).) Because we reverse the judgment in favor of defendants, they are not prevailing parties under Civil Code section 1717, and we will reverse the fee award.

## IV. DISPOSITION

In No. A130272, the order granting summary judgment in favor of defendants and the judgment are reversed. Also in No. A130272, plaintiff's appeal of the order denying its motion for a new trial is dismissed as moot.

---

[11] As noted above, the complaint in the Nordeman action alleges that Montgomery Sansome Ltd. LP is a *limited* partnership. However, the complaint in the Nordeman action is not part of the summary judgment record in this action, and therefore is not relevant to our determination of whether there are triable issues of material fact. (The complaint in the Nordeman action was submitted to the trial court in this case in connection with the postjudgment attorney fees motion, and is part of the record on this consolidated appeal.)

[12] Defendants argue that they "controverted" licensure in their motion for summary judgment, and that therefore, under section 7031, subdivision (d), plaintiff had to prove, with a verified certificate of licensure from the CSLB, that Montgomery Sansome Ltd. LP held a valid contractor's license. (See § 7031, subd. (d).) But defendants did not "controvert[]" the existence of a proper license; they agree that the Montgomery Sansome limited partnership held license No. 741713. The controverted issue in this case is whether the Montgomery Sansome entity that contracted with defendants is the same entity that held the admittedly valid license.

[13] Plaintiffs also appeal the trial court's order denying their new trial motion. Because we reverse the summary judgment in favor of defendants, to which plaintiff's new trial motion was directed, plaintiff's challenge to the new trial order is moot.

In No. A130694, the order awarding attorney fees is reversed.

Plaintiff shall recover its costs in both appeals.

Lambden, J., and Richman, J., concurred.