Filed 7/14/15  Strle Enterprises v. Western Air Limbach CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| STRLE ENTERPRISES, INC., | B256743 |
| Plaintiff, Cross-defendant, and Appellant, | (Los Angeles County Super. Ct. No. BC457308) |
| v. | |
| WESTERN AIR LIMBACH LP, | |
| Defendant, Cross-complainant, and Respondent. | |

APPEAL from the judgment of the Superior Court of Los Angeles, Malcolm Mackey, Judge.  Affirmed.

Law Offices of F. Glenn Nichols and F. Glenn Nichols for Plaintiff, Cross-defendant, and Appellant.

Poindexter & Doutré, Inc. and Jeffrey A. Kent for Defendant, Cross-complainant, and Respondent.

_____

Plaintiff, cross-defendant, and appellant Strle Enterprises, Inc. (Strle) appeals from the judgment dismissing its complaint for breach of contract against defendant, cross-complainant, and respondent Western Air Limbach LP (Limbach), and awarding Limbach recovery of payments previously made to Strle on its cross-complaint.

The sole issue on appeal is whether the Construction Services Licensing Law, Business and Professions Code section 7000 et seq. (CSLL)[1] bars Strle from maintaining any action for recovery because it was not properly licensed at all times during its performance of the contract.

We affirm.

## FACTS AND PROCEDURAL HISTORY[2]

Strle entered into a written subcontract agreement with Limbach, under which Strle agreed to furnish and install radiant ceiling panels in school buildings that Limbach had subcontracted to build for the Los Angeles Unified School District.[3]

Under change order No. 1, the parties agreed to remove the furnishing and price of the radiant panels from the subcontract by creating a separate purchase agreement. Subsequent to change order No. 1, the subcontract was for installation only. Under a

---

[1] Unless otherwise indicated, all further statutory references are to the Business and Professions Code.

[2] Neither party challenges the trial court's findings of fact in its statement of decision. Our recitation of facts relies primarily on the statement of decision and the trial exhibits cited in that decision.

[3] Radiant panels provide an alternative to traditional methods of air distribution in heating and cooling systems. They are suspended from a metal and/or concrete deck below the ceiling of the room in which they are installed. The panels are connected to the deck with a seismically engineered system of rods, cables, and attachments.

second change order agreement, Strle agreed to "[i]nclude the providing and installation of the seismic restraint for the radiant panels."

Following installation, the parties disagreed as to whether the work performed under the subcontract was timely, satisfactory, and complete.[4]  Limbach paid Strle $443,625.03 for the installation work, which was less than the agreed-upon price.[5]

Strle brought suit against Limbach for:  (1) money due on the subcontract; (2) open book account; (3) account stated; and (4) reasonable value of labor and materials furnished.  Limbach cross-complained for damages for breach of the subcontract.

The case was tried to the court.  The parties stipulated that Strle did not have and had never had a California contractor's license, and that Limbach paid Strle a total of $443,625.03 under the subcontract.

Two days into the trial, the trial court ordered the trial bifurcated.  The court first heard the parties' arguments as to whether Strle was required to have a contractor's license to install permanent fixtures under the subcontract.  It held that section 7031 required licensure for the installation work, that Strle was not licensed, and that no exemptions to section 7031 applied.  It specifically rejected Strle's arguments that licensure could be excused because:  (1) Strle's president, Richard Strle, was individually licensed; (2) Strle's sister corporation, Air Performance H.V.A.C., Inc. (Air Performance) allegedly performed the installation work; (3) as a mere supplier of the radiant panels rather than the actual installer, Strle was exempted under section 7052; and (4) as an installer of products that were not fixtures, Strle was exempted under section 7045.  The court dismissed Strle's complaint, and awarded Limbach recovery of the $443,625.03 in payments made on its cross-complaint.

Strle timely appealed.

---

[4] Performance under the purchase agreement was not at issue.

[5] The trial court made no finding as to the precise amount of the contract price, which was not necessary to its resolution of the issues.

# DISCUSSION

In its opening brief, Strle argues that the trial court erred in finding the complaint barred pursuant to section 7031, because the policy objectives behind the CSLL were met. Strle asserts that the interests of the public were protected because all installation work was done by Air Performance, its duly licensed sister company, and supervised by Richard Strle, the president and owner of both Strle and Air Performance, who was also licensed.[6] We disagree.

## *Relevant Law*

"[Whether the trial court erred in applying section 7031] is a question of law to which we apply a de novo standard of review. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 861-865; see also Code Civ. Proc., § 589.)" (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 937 (*Vallejo*).)

Section 7031, subdivision (a) provides that "no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person." "'[T]he bar extends to actions "in law or equity". . . . [Citation.]' [Citation.]"

---

[6] Strle does not contend the radiant panels are not fixtures for the purposes of the CSLL. In addition, it has waived any other arguments it purports to have made by either failing to support them with argument and legal precedent, or by failing to raise them in its opening brief. (Cal. Rules of Court, rule 8.204(a)(1)(B) [contentions must be supported by argument and citation to legal authority]; *Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649-650 [same]; *Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 (*Campos*) [points raised in the reply brief for the first time will not be considered].)

4

(*WSS Indus. Const., Inc. v. Great West Contractors, Inc*. (2008) 162 Cal.App.4th 581, 587 (*WSS*).) There are a few narrow exceptions to section 7031, subdivision (a) – notably for those who sell and install articles that are not a fixed part of the structure under section 7045, and for those who furnish materials only under section 7052 – neither of which apply in this case.[7]

"The CSLL embodies a comprehensive legislative scheme governing the construction business in California. It reflects a strong public policy, which favors protecting the public from unscrupulous and incompetent contractors. According to our Supreme Court, 'The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services. [Citation.] The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. [Citation.]' [Citations.] Section 7031, subdivision (a), applies '[r]egardless of the equities.' [Citation.] For the past 50 years, it has been held that 'courts may not resort to equitable considerations in defiance of section 7031.' [Citation.] That is because the statute ""'represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties . . . .*'" [Citations omitted.]' [Citation.]" (*WSS*, *supra*, 162 Cal.App.4th at p. 587.)

As a further deterrence to contracting to install fixtures without proper licensing, section 7031, subdivision (b), provides that "a person who utilizes the services of an

---

[7] Strle waived its belated argument that it is excepted from section 7031 pursuant to section 7052, as discussed in *Steinbrenner v. J. A. Waterbury Const. Co*. (1963) 212 Cal.App.2d 661 (*Steinbrenner*), because it did not raise the issue in the opening brief. (See *Campos*, *supra*, 57 Cal.App.4th at p. 794, fn. 3.) Regardless, *Steinbrenner* is distinguishable on its facts. The case involved an unlicensed subcontractor who entered into an agreement with a general contractor to "furnish certain millwork such as doors, trim, plywood and manufactured cabinets." (*Id*. at pp. 662-663.) No installation work was to be performed under the contract. In this case, Strle contracted to perform installation work, and cannot claim that it merely agreed to furnish or supply materials.

unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract."

"A 'contractor,' including a corporation so acting (§ 7025), 'for the purposes of this chapter, is synonymous with "builder" and, within the meaning of this chapter, a contractor is any person who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or herself or *by or through others*, construct, alter, [or] repair,' inter alia, a structure. (§ 7026, italics added.)" (*Opp v. St. Paul Fire & Marine Ins. Co.* (2007) 154 Cal.App.4th 71, 75 (*Opp*).)

*Analysis*

Strle urges this court to consider the inequity of allowing Limbach to obtain the benefit of the work performed under the subcontract without providing compensation, arguing that the legislature's public policy considerations have been satisfied in this case. The legislature has clearly stated that the protections offered by section 7031 are of such importance that the equities are not to be taken into consideration, no matter how harsh the results. We cannot substitute our judgment for that of the legislature (see *Vallejo*, *supra*, 24 Cal.App.4th at p. 943), and will not entertain Strle's request that we do so here, despite the admittedly severe consequences.

Regardless, both of Strle's legal arguments have been considered and rejected in prior cases. (*Vallejo*, *supra*, 24 Cal.App.4th at p. 947 [section 7031 barred plaintiff's cause of action where unlicensed developer contracted with licensed contractor to provide labor, equipment, and materials]; *Opp, supra,* 154 Cal.App.4th at pp. 74-75 [section 7031 barred plaintiff's cause of action although president of unlicensed contractor was individually licensed].)

6

Strle's argument that Air Performance performed the installation work does not excuse it from section 7031's licensing requirement. [8] In *Vallejo*, *supra*, 24 Cal.App.4th 929, the "master developer" of a planned community sold land to builders to construct homes for sale. It agreed to make a number of infrastructure improvements after the close of escrow. The master developer did not have a contractor's license, but it retained a licensee and licensed subcontractors to perform the infrastructure improvements. A dispute arose between the master developer and the purchasers with respect to whether the master developer had adequately provided the agreed upon improvements. In response to a suit filed by the purchasers, the master developer recorded mechanics' liens against the properties and attempted to foreclose on the liens. The purchasers defended the mechanics' lien action, arguing the master developer was acting as a contractor within the meaning of section 7026 and therefore was barred by section 7031 from pursuing any claim against them. The Court of Appeal agreed, rejecting the master developer's argument that it merely acted as an administrator of the construction contracts, which were actually performed by licensed contractors. It held that "[t]he Legislature has determined that ultimate responsibility for construction work must rest with a licensed contractor-in this case, a licensed general engineering contractor-who has demonstrated the requisite competence in the construction business. This policy ensures that all subcontractors and materialmen on a project will be answerable to and directed by someone whose knowledge and experience meet uniform requirements. In addition, this policy protects consumers of the contractor's services by making all persons who are responsible for construction projects subject to the regulatory powers of the [Contractors' State Licensing Board]." (*Vallejo*, *supra*, 24 Cal.App.4th at p. 942.)

Similarly, in this case it is irrelevant whether Air Performance performed all or any of the installation work under the subcontract. Although Strle argues that its "only technical violation of the contractor's license law was that Mr. Strle *signed* the contract

---

[8] Contrary to Strle's assertions, the trial court declined to decide the factual issue of whether Air Performance performed any or all of the installation work, deeming resolution of the issue unnecessary to its decision.

under the name of Strle Enterprises, Inc. rather that Air Performance, Inc.," it does not contend that Air Performance was an intended party to the subcontract, or that Richard Strle mistakenly executed the subcontract on behalf of the wrong company. As the entity that contracted to do the installation work, Strle is ultimately responsible and must be licensed as required by section 7031. It is therefore barred from bringing suit for compensation under the subcontract. It makes no difference whether it "borrowed" workers from its sister company as it claims, or officially subcontracted with Air Performance to perform the work. In either case, Strle itself failed to obtain the proper licensing at any point during the installation process, and is not immune from the ramifications of its inaction.

Nor does it matter that Richard Strle maintained an individual license permitting him to perform such installation work. In *Opp*, *supra*, 154 Cal.App.4th 71, a subcontractor, Mountain Connection, Inc. (MCI), sued on a payment bond. When the defendant asserted MCI was not a licensed contractor, MCI filed an amended complaint substituting as plaintiff "'William Opp dba Mountain Connection and Mountain Connection, Inc.'" (*Id.* at p. 73.) Following summary judgment in the defendant's favor, Opp argued on appeal that the trial court erred because the evidence showed he had placed his personal contractor's license number on the contract, supervised most of the work, and the general contractor "dealt with him as a sole proprietor, doing business under the name of Mountain Connection, Inc." (*Id*. at p. 74.)

The appellate court rejected these arguments. It noted that section 7031 is not directed toward who actually "'did the work,' but who was 'engaged in the business or acting in the capacity of a contractor.'" (*Opp*, *supra*, 154 Cal.App.4th at p. 75.) It concluded that the undisputed evidence revealed that MCI was the contracting party because William Opp signed the contract "as president of MCI." (*Id.* at p. 76.) Accordingly, the suit was barred by section 7031. (*Id*. at p. 75.)

The court also rejected the suggestion that Opp could be considered a party to the contract simply because he used his individual license on the contract, observing: "Such a rule would violate at least three aspects of public policy. First, of course, it would

8

render ineffective the contractor's license requirement and encourage fraud if insertion of the license number of one who is not the contractor permitted a suit that otherwise was barred by section 7031. Second, in this case it would be tantamount to permitting an individual to adopt a prohibited fictitious business name and then to sue on a contract, when such suit would be barred for any other unregistered business. [Citation.] Finally, '[p]arties who determine to avail themselves of the right to do business by means of the establishment of a corporate entity must assume the burdens thereof as well as the privileges.' [Citation.] An individual who has obtained the benefits of corporate limited liability will not be permitted to repudiate corporate existence just because the corporation has become an inconvenience. [Citation.]" (*Opp*, *supra*, 154 Cal.App.4th at p. 76, fn. omitted.)

Strle's arguments fail for the same reasons. It is undisputed that Richard Strle is not a party to this action, and did not sign the subcontract in his individual capacity, or intend to. Strle cannot utilize Richard Strle's license to avoid the ramifications of contracting to perform installation work without a license of its own. Strle has enjoyed the benefits of incorporation, and must bear the responsibilities as well. The fact that its owner and president is duly licensed does not permit avoidance of the bar imposed by section 7031.

## DISPOSITION

The judgment is affirmed.  Defendant, cross-complainant, and respondent Western Air Limbach LP is awarded its costs on appeal.

KRIEGLER, J.

We concur:

MOSK, Acting P. J.

KIRSCHNER, J. *

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.