[No. F066327. Fifth Dist. June 5, 2014.]

E. J. FRANKS CONSTRUCTION, INC., Plaintiff, Cross-defendant and Respondent, v.
BHUPINDER K. SAHOTA et al., Defendants, Cross-complainants and Appellants;
EDDIE FRANKS et al., Cross-defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

[*]Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the Facts and parts II. through VI. of the Discussion.

## Counsel

P. Fateh K. Sahota for Defendants, Cross-complainants and Appellants.

Sean P. McLeod for Plaintiff, Cross-defendant and Respondent and for Cross-defendants and Respondents.

## OPINION

### PEÑA, J.—

### INTRODUCTION

Edward J. Franks II (Eddie Franks) became a licensed general building contractor in 1995, and operated a sole proprietorship under the name E. J. Franks Construction. During the course of constructing a home for defendants (the Sahotas), Franks incorporated his company under the name E. J. Franks Construction, Inc. (EJFCI). On April 12, 2005, his contractor's license was reissued to the corporation. The trial court rejected the Sahotas' contention EJFCI was prohibited by Business and Professions Code section 7031[1] from pursuing quantum meruit damages against them because it was an unlicensed contractor at the time the construction contract was entered and, therefore, was not licensed "at all times" during the performance of the contract. (*Id.*, subd. (a).) The Sahotas appeal this ruling and also raise other contentions. In the published portion of this opinion, we hold section 7031 does not apply to the unique situation here because to do so would not advance the statute's goal of precluding unlicensed contractors from maintaining actions for compensation. We reject the Sahotas' other contentions in the unpublished portion of the opinion.

### PROCEDURAL HISTORY

On December 6, 2006, EJFCI filed its complaint in the Merced Superior Court, case No. 149926, to foreclose on a mechanic's lien, and for breach of contract, common counts, and quantum meruit. On or about July 5, 2007, the Sahotas served an answer to the complaint.

---

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

Section 7031 provides, in relevant part, as follows: "(a) Except as provided in subdivision (e), no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person, except that this prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029."

On July 5, 2007, the Sahotas filed a cross-complaint, asserting breach of contract and fraud. Cross-defendants Eddie Franks, E. J. Franks Construction and EJFCI served an answer to the cross-complaint on or about February 22, 2008.

Prior to trial, the court ruled that plaintiff EJFCI was limited to its claims of "quantum meruit or unjust enrichment" after April 12, 2005, for extra work performed at the Sahotas' residence.

Jury trial commenced June 26, 2012. On June 29, 2012, the jury reached a verdict in favor of EJFCI on its complaint and against the Sahotas on their cross-complaint.

On July 20, 2012, the Sahotas sought a new trial, or in the alternative, a remittitur. That same date, the Sahotas also filed a motion for judgment notwithstanding the verdict. Following a hearing on August 17, 2012, the various motions were denied by the trial court.

Judgment was entered in favor of EJFCI and against the Sahotas on September 18, 2012. More specifically, EJFCI was to recover $66,000 in damages and $2,949.15 in costs, for a total judgment of $68,949.15 against the Sahotas.

### FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISCUSSION

I.  *The Applicability of Section 7031*

The Sahotas argue that section 7031 is a complete bar to EJFCI's quantum meruit claim and that the trial court erred in allowing the corporation to proceed with the cause of action.

■ " 'Quantum meruit refers to the well-established principle that "the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." [Citation.] To recover in quantum meruit, a party need not prove the existence of a contract [citations], but it must show the circumstances were such that "the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." ' [Citation.]" (*Miller v. Campbell,*

---

*See footnote, *ante,* page 1123.

*Warburton, Fitzsimmons, Smith, Mendel & Pastore* (2008) 162 Cal.App.4th 1331, 1344 [76 Cal.Rptr.3d 649].) "The underlying idea behind quantum meruit is the law's distaste for unjust enrichment. If one has received a benefit which one may not justly retain, one should 'restore the aggrieved party to his [or her] former position by return of the thing or its equivalent in money.' [Citation.]" (*Maglica v. Maglica* (1998) 66 Cal.App.4th 442, 449 [78 Cal.Rptr.2d 101], italics omitted.) " 'The measure of recovery in *quantum meruit* is the reasonable value of the services rendered *provided* they were of direct benefit to the defendant.' [Citations.]" (*Ibid.*) In other words, quantum meruit is equitable payment for services already rendered.

■ The Contractors' State License Law (CSLL) (§ 7000 et seq.) is a comprehensive legislative scheme governing the construction business in California. "The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. [Citations.]" (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995 [277 Cal.Rptr. 517, 803 P.2d 370].) The CSLL's purpose is to " ' "protect the public from incompetent or dishonest providers of building and construction services" ' " and to prohibit a contractor who has violated the statute from recovering " ' "for the fruits of his labor." ' " (*Pacific Caisson & Shoring, Inc. v. Bernards Bros. Inc.* (2011) 198 Cal.App.4th 681, 687 [130 Cal.Rptr.3d 430].) Pursuant to the CSLL, contractors "must be licensed unless exempt." (*White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 517 [100 Cal.Rptr.3d 434].)

■ Section 7031 is directed at precluding unlicensed contractors from maintaining actions for compensation. (See *White v. Cridlebaugh, supra,* 178 Cal.App.4th at p. 518; *WSS Industrial Construction, Inc. v. Great West Contractors, Inc.* (2008) 162 Cal.App.4th 581, 587 [76 Cal.Rptr.3d 8]; *Wright v. Issak* (2007) 149 Cal.App.4th 1116, 1123 [58 Cal.Rptr.3d 1].) "Because of the strength and clarity of this policy, it is well settled that section 7031 applies despite injustice to the unlicensed contractor. 'Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties*, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of this state. [Citation.] . . .' [Citations.]" (*Hydrotech Systems, Ltd. v. Oasis Waterpark, supra,* 52 Cal.3d at p. 995; accord, *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 423 [30 Cal.Rptr.3d 755, 115 P.3d 41].)

We hold section 7031 does not apply here. At no time was the work on the Sahotas' home performed by an *unlicensed* contractor. Rather, in this case,

the work commenced pursuant to contract by E. J. Franks Construction as a sole proprietor. When the parties entered the contract, E. J. Franks Construction was a licensed general building contractor, having been issued a license on April 14, 1995. During the course of the Sahota project, E. J. Franks Construction incorporated and the license issued to and maintained by Franks was reissued to the corporation on April 12, 2005. Therefore, all of the work accomplished at the Sahotas' residence was performed by a *licensed* contractor, to wit: the license issued to E. J. Franks Construction in 1995 and valid through April 11, 2005, and the license issued to E. J. Franks Construction, Inc., on April 12, 2005, and valid through April 30, 2015.

Unlike the authorities cited by the Sahotas, this case did not involve a period wherein the contractor was unlicensed or where a license previously issued lapsed during the construction project. (See *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc., supra,* 36 Cal.4th at pp. 419–420 [MW Erectors entered into subcontract before it obtained a structural steel contractor's license]; *Opp v. St. Paul Fire & Marine Ins. Co.* (2007) 154 Cal.App.4th 71, 72–73 [64 Cal.Rptr.3d 260] [subcontractor MCI did not hold a California building contractor's license when it entered into an agreement with Mauldin-Dorfmeier]; see also *Alatriste v. Cesar's Exterior Designs, Inc.* (2010) 183 Cal.App.4th 656, 661 [108 Cal.Rptr.3d 277] [§ 7031, subd. (b) applies because Cesar's was unlicensed when work began]; *Goldstein v. Barak Construction* (2008) 164 Cal.App.4th 845, 849–850, 855 [79 Cal.Rptr.3d 603] [contractor began work on remodel before becoming licensed, for the first time, several months later]; *WSS Industrial Construction, Inc. v. Great West Contractors, Inc., supra,* 162 Cal.App.4th at p. 585 [WSS "was unlicensed during a period in which it performed services that could only be performed by a licensed contractor," therefore, § 7031 bars recovery].)

■ Instead, this case involves a *licensed* contractor and a change in business entity status. Proper licensure was in place at all times. Applying section 7031 to the circumstances here would lead to absurd results. Were we to find section 7031 applied, it would effectively preclude licensed sole proprietor contractors from lawfully incorporating and obtaining a reissue of a general contracting license to the new business entity at any time during the construction period. The purpose of section 7031 is to deter *unlicensed* contractors from recovering compensation for their work. It is not intended to deter *licensed* contractors from changing a business entity's status and obtaining a reissuance of the license to the new entity during a contract period.

More particularly, this court has previously recognized a distinction between a corporation and an individual as significant for purposes of the

CSLL. In *Opp v. St. Paul Fire & Marine Ins. Co., supra,* 154 Cal.App.4th 71, the plaintiff signed a building contract as president of a corporation and misrepresented his own contractor's license number as that of the corporation. The corporation, in fact, was unlicensed. The president sued a surety on a payment bond to recover compensation for work performed, alleging he was the real contracting party and that he had used the corporate name as a fictitious business name. (*Id.* at pp. 72–73.) The trial court concluded the corporation was the contracting party, the president was not a party to the contract, and section 7031 precluded any recovery in favor of the corporation as an unlicensed contractor. The court therefore granted summary judgment in favor of the surety. (*Opp,* at p. 73.)

This court affirmed, stating undisputed evidence showed the corporation, rather than its president, was the contracting party. The court therefore concluded the corporation had acted as a contractor without a license, regardless of who actually did the work. (*Opp v. St. Paul Fire & Marine Ins. Co., supra,* 154 Cal.App.4th at p. 75.) We rejected the plaintiff's argument that a triable issue of fact existed as to whether, despite the fact the contract was in the name of the corporation, the plaintiff individually was also a party to the contract. We stated that to recognize the individual as a contracting party in those circumstances would, among other things, encourage fraud through the misuse of another person's contractor's license and allow an individual to enjoy the benefits of incorporation while avoiding the burdens by effectively repudiating the existence of the corporation when it was convenient to do so. (*Id.* at p. 76.)

Unlike *Opp,* Franks did not misrepresent his contractor's license by claiming it belonged to a corporate entity. In fact, the corporate entity did not exist when the contract entered into by E. J. Franks Construction and Bhupinder K. Sahota was executed. The corporation was not the contracting party. Here, the corporation did not act "as a contractor without a license." Rather, the corporation—EJFCI—was licensed as of April 12, 2005, and that business entity merely continued the work the sole proprietor began. These distinctions make the holding in *Opp,* that the plaintiff could not recover on a surety bond and was precluded from doing so pursuant to section 7031, inapplicable to this case.

The Sahotas' reliance upon *WSS Industrial Construction, Inc. v. Great West Contractors, Inc., supra,* 162 Cal.App.4th 581 in support of their position is misplaced. In that case, a subcontractor brought suit against a general contractor. The subcontractor, a corporation, did not hold a contractor's license, but its president was a licensed contractor at all times during the performance of the work. The trial court concluded the subcontractor had substantially complied with the license requirement and therefore denied the

defendant's nonsuit motion. (*Id.* at pp. 585–586.) The Court of Appeal reversed, holding the corporation could not recover any compensation for the work performed because it was not a licensed contractor at the time of the performance of the work, and the president's individual license was irrelevant. (*Id.* at pp. 591, 594 & fn. 8.) The *WSS* court concluded the corporation had failed to satisfy the statutory requirements for substantial compliance (see § 7031, subd. (e)) and therefore was entitled to no recovery. (*WSS Industrial Construction, Inc. v. Great West Contractors, Inc., supra,* at pp. 595–596.) Significantly, unlike this matter, *WSS* involved a subcontractor who entered into an agreement with a general contractor at a time when the subcontractor was unlicensed. The subcontractor only became licensed after work commenced on the project. Here, however, rather than enter a contract as an unlicensed contractor, Franks entered into a contract with Bhupinder Sahota as the sole proprietor of E. J. Franks Construction, holding general contractor's license No. 705224. Later, that license was reissued to the corporation.

■ Unlike the aforementioned authorities, the damages recovered by EJFCI following the jury's verdict do not pertain to either work performed while the corporation was unlicensed or work performed pursuant to the contract Franks, as an individual or sole proprietor, entered into with the Sahotas. Rather, the damages covered only extra work over and above the contract, and only for the period following the reissuance of the general building contractor license from E. J. Franks Construction to EJFCI on April 12, 2005. As the court in *MW Erectors, Inc.,* stated, section 7031's language stressing "that an *unlicensed* contractor may not sue for compensation . . . implies that licensed contractors have noncontractual remedies to recover for work not covered by a formal contract. Indeed, parties do sometimes operate without, or beyond the boundaries of, a formal contractual arrangement, under an implicit understanding that the contractor is working on a quantum meruit basis." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc., supra,* 36 Cal.4th at p. 428.)

■ This case does not present a situation in which the court resorted to equitable considerations in defiance of section 7031. Thus, EJFCI was not precluded from recovering quantum meruit damages and the trial court did not err in ruling accordingly.

■ To the degree the Sahotas' reply brief now contends EJFCI must disgorge its compensation pursuant to section 7031, subdivision (b), we will not consider this argument. Disgorgement was not argued or even mentioned in the Sahotas' opening brief. "[W]e will not address arguments raised for the first time in the reply brief [citation] . . . ." (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1295 [135 Cal.Rptr.3d 591].)

II.–VI.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to EJFCI.

Poochigian, Acting P. J., and Sarkisian, J.,† concurred.

A petition for a rehearing was denied June 26, 2014, and appellants' petition for review by the Supreme Court was denied August 20, 2014, S219927.

---

*See footnote, *ante*, page 1123.

†Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.