Filed 7/1/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| YOSEF Y. MANELA, | B302660 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. 19STCV18640 c/w 19STCV24162) |
| v. | |
| JOHN D.S. STONE et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Daniel S. Murphy, Judge. Reversed.

Selvin & Weiner and Beryl Weiner for Defendants and Appellants.

Buchalter, Robert M. Dato; and Gabriel G. Green for Plaintiff and Respondent.

_____

Defendants John D.S. Stone (Stone) and JDSS Construction Company, Inc. (JDSS) (collectively, the Stone parties) appeal from an order removing the Stone parties' mechanic's lien on a property owned by plaintiff Yosef Manela (Manela) and his former wife Nomi Manela (the Manela property). The Stone parties jointly filed the mechanic's lien to collect payment for work they performed on the Manela property pursuant to a construction contract executed by the Manelas and Stone (the Manela contract), the quality of which Manela challenged in a separate lawsuit. After compelling the parties' disputes to arbitration, the trial court granted Manela's motion to remove the mechanic's lien based on the court's conclusion that Business and Professions Code section 7031, subdivision (a)[1] likely required the Stone parties to forfeit compensation for any work performed under the Manela contract.

Section 7031 generally prohibits a contractor from collecting any compensation under a construction contract if the contractor is not licensed at all times during performance of that contract. (See § 7031, subd. (a).) After beginning work on the Manela property, Stone formed a corporation, JDSS, of which Stone is the sole shareholder, and assigned the Manela contract to the new entity. The trial court concluded that, because Stone assigned the contract to JDSS before Stone's contracting license had been transferred to JDSS, JDSS was unlicensed during a portion of the time it was "performing work under the [c]ontract" and could not recover compensation thereunder, including via the mechanic's lien.

---

[1] Unless otherwise specified, all statutory references are to the Business and Professions Code.

On appeal, the Stone parties argue that the evidence does not support that JDSS performed work under the Manela contract before it became licensed, and in particular that the trial court improperly relied on an assignment agreement as conclusive evidence of such unlicensed performance.  We hold that the evidence in the record compels the conclusion that section 7031 does not apply in the instant case.  Accordingly, we reverse.

## FACTS AND PROCEEDINGS

### A.    *The Manela Contract*

From 1982 through 2015, Stone held a California general contractor's license (license No. 425872) and did business under that license as Stone Construction Company, a fictitious business name for his sole proprietorship.

In early 2014, Stone and Manela began discussing a major home remodeling project on the Manela property.  On January 4, 2015, Stone—as a sole proprietor doing business as Stone Construction Company—and the Manelas signed the Manela contract regarding the project.  The contract provided that "SCC [Stone Construction Company] will perform the work specified herein at the [Manela] property on behalf of the owner[s] [the Manelas]" and included a price and estimated completion date of December 2015.  (Capitalization omitted.)  It further provided that "extra work and change orders become part of the contract once the order is prepared in writing and signed by the parties prior to the commencement of any work covered by the new change order."  (Capitalization omitted.)

3

### B. *The Incorporation of Stone's Business As JDSS*

On February 11, 2015, after work on the project had begun, Stone formed JDSS, a corporation doing business under the same fictitious business name as Stone's sole proprietorship, Stone Construction Company. Stone was the sole shareholder of the corporation. Stone applied to the Contractors State License Board (CSLB) to reissue his existing contractor's license to JDSS.

While waiting for the CSLB to reissue the license, Stone executed a March 15, 2015 agreement between himself and JDSS (the assignment agreement) that purports to formally assign to JDSS "all of [Stone's] rights and obligations under the [Manela contract]" "effective . . . March 15, 2015."[2] The agreement was signed by Stone in his personal capacity, as well as by Stone on behalf of JDSS in his capacity as its president. It was not signed by either of the Manelas.

The CSLB ultimately reissued Stone's license (license No. 425872) to JDSS on June 22, 2015. Stone is listed as the "qualifying individual" on the reissued license. (See § 7068, subd. (b)(3) ["a corporation, or any other combination or

---

[2] Although the assignment agreement purportedly "assigns" Stone's "rights and obligations" under the Manela contract, it is properly understood as an assignment of Stone's rights under the Manela contract to JDSS, which JDSS accepted, and an attempted delegation of Stone's duties under that contract. (See 29 Williston on Contracts (4th ed. 2021) § 74:27 ["One can assign rights and delegate duties; however, one cannot assign duties"]; *Recorded Picture Company [Productions] Ltd. v. Nelson Entertainment, Inc.* (1997) 53 Cal.App.4th 350, 362 [the " 'assignment of rights under an executory contract does not [necessarily] cast upon the assignee the obligations imposed by the contract upon the assignor' "].)

4

organization, . . . shall qualify by the appearance of a responsible managing officer or responsible managing employee who is qualified for the same license classification as the classification being applied for"].)

C. *Activity During the Period When JDSS Was Not Yet Licensed*

Manela does not dispute that Stone was the person who performed all contractor work on the project during the period between March 15, 2015 (when Stone purported to assign the Manela contract to JDSS) and June 22, 2015 (when the CSLB reissued Stone's license to JDSS). Whether Stone was doing so in his personal capacity or as an agent of JDSS was the key subject of disagreement in the proceedings below.

During this approximately three-month period, Stone continued to send invoices to the Manelas as a sole proprietorship, doing business as Stone Construction Company. The first invoice reflected in the record from JDSS is dated August 10, 2015 (i.e., after JDSS was licensed); all subsequent invoices reflected in the record for work under the Manela contract are from JDSS as well.

The record also contains an unsigned change order dated during the three-month period when JDSS was not yet licensed. This document, dated June 10, 2015, is on JDSS letterhead and lists license number 425872 as the applicable contractor's license number. It provides that "[t]he contractor agrees to perform and the owner agrees to pay for the following changes to this contract," then describes certain work and its pricing. There are spaces on the form for both the "contractor" and "owner" to sign and date under the word "approved," but these spaces are blank. (Capitalization omitted.) The document appears to bear

a "paid" stamp, which includes a text box that is likewise blank, as well as a notation that the work was "invoiced on ynm-07." (Capitalization omitted.) The record does not indicate if or when this work was performed and/or approved, or when the work described in the change order was invoiced or paid for.

### D. *The Parties' Dispute and Lawsuit*

Throughout the course of the project, Manela requested numerous change orders that expanded the scope of the project, increased the cost, and delayed the estimated completion date, although the extent to which they did so is a subject of debate between the parties. In late 2018, the project still was not completed, and the Manelas stopped paying JDSS's invoices. Manela filed this action against the Stone parties,[3] whom the complaint alleged were alter egos of each other, alleging they had performed defective work and made material misrepresentations in order to induce the Manelas to sign the Manela contract.

The Stone parties then jointly recorded a mechanic's lien on the Manela property for the amount of allegedly unpaid invoices and filed a related action against the Manelas.[4] Their verified complaint included claims for breach of contract and foreclosure on the mechanic's lien. Paragraph 18 of the complaint alleged that "[f]rom and after March 15, 2015, plaintiff JDSS Construction Company, Inc., dba Stone Construction Company continued work to provide the services required under the

---

[3] Although the Manelas both signed the Manela contract, Manela is the only plaintiff in the lead action against the Stone parties, and Nomi Manela is not a party to either that action or this appeal.

[4] The two actions were assigned to the same trial judge.

6

contract." (Capitalization omitted.) The assignment agreement was attached as an exhibit to the verified complaint as well.

The Stone parties also filed a petition to compel arbitration of Manela's claims, pursuant to an arbitration clause in the Manela contract.

### E. *Licensure Issue Raised in Manela's Amended Complaint and Motion to Remove Mechanic's Lien*

Manela's initial complaint did not include any allegations about or causes of action based on lack of licensure. Based on the Stone parties' verified allegation in paragraph 18 of their complaint, however, Manela amended his complaint to add allegations that JDSS "and possibly Stone as well" had performed work on the project without a contractor's license, in violation of section 7031. Section 7031, subdivision (a) prohibits, inter alia, any "person engaged in the business or acting in the capacity of a contractor" from "recover[ing] . . . compensation for the performance of any act or contract where a license is required by this chapter without alleging that they were a duly licensed contractor at all times during the performance of that act or contract." Subdivision (b) of the section further provides for disgorgement of compensation already paid under such circumstances. (§ 7031, subd. (b) ["a person who utilizes the services of an unlicensed contractor may bring an action . . . to recover all compensation paid to the unlicensed contractor for performance of any act or contract"].) Manela's amended complaint asserted new causes of action on this basis and sought, in addition to damages based on Manela's preexisting breach of contract and negligence claims, return of *all* money the Manelas

7

had paid for work under the Manela contract, totaling over $2 million.

Manela also filed a motion to remove the Stone parties' jointly filed mechanic's lien on several bases, including that the lien was invalid under section 7031, subdivision (a), because neither JDSS nor Stone was continuously licensed at all times while performing work on the project.

## F. *The Parties' Submissions Regarding the Motion to Remove Mechanic's Lien*

The Stone parties opposed the motion to remove the mechanic's lien, claiming that there had been no gap in the requisite licensure. Stone's declaration submitted in support of the Stone parties' opposition contains several statements about when Stone believed himself to be providing services as an agent of JDSS. The declaration first provides that "[p]rior to June 22, 2015 [the date the license was transferred to JDSS], Stone conducted his general contractor license business under the dba Stone Construction Company." Later, in paragraph 13, it provides that "[f]rom and after *February 11, 2015*, all of Stone's general contracting business was conducted under the aegis of JDSS." (Italics added.) Finally, the declaration provides that Manela "knew from and after the date of the [fifth] change order dated June 10, 2015 that JDSS was providing all of the services (labor and materials) under the contract" and that this was "reflected on the change orders, the JDSS invoices, [and] payments by [Manela] to JDSS." (Capitalization omitted.)

In response, Manela argued that the assignment of the construction contract prior to JDSS becoming licensed created a gap in the requisite licensure even if Stone was always the person performing the contracting services. Somewhat in tension

8

with this, however, in opposing the Stone parties' concurrently filed motion to compel arbitration, Manela *also* argued that "Manela never consented to th[e] assignment, nor did he ratify it."[5]

The day before the hearing on the mechanic's lien motion, the Stone parties' counsel filed an errata to the Stone declaration previously filed in opposition to that motion. The errata purported to alert the court to a "typographical error" and omission—namely that the wrong date for when "all of Stone's general contracting business was conducted under the aegis of JDSS" was inadvertently included in the Stone declaration. In a supplemental declaration from Stone in support of the errata, Stone explained that he had actually conducted business as JDSS " '[f]rom and after June 22, 2015,' " rather than from and after February 11, 2015, as his earlier declaration had indicated.

### G. *Trial Court's Decisions Regarding the Mechanic's Lien Motion and Related Motion for Reconsideration*

The court addressed Manela's motion to remove the mechanic's lien and the Stone parties' motion to compel arbitration in the same tentative ruling, which the court ultimately adopted in full. In that ruling, the trial court first granted the arbitration motion. Manela had argued in opposition to the motion that he could not be compelled to arbitrate with JDSS because JDSS had not signed the arbitration agreement.

---

[5] Likewise, in his opposition to the Stone parties' petition to compel arbitration, Manela argued he could not be compelled to arbitrate his claims against JDSS because JDSS was not a party to the home improvement contract.

The court rejected this argument based on the court's conclusion that the allegations in Manela's complaint established "sufficient identity of [the] parties between Stone . . . and JDSS" to enforce the arbitration agreement against Manela.

In addressing the mechanic's lien motion, the court first rejected the Stone parties' argument that the court lacked jurisdiction to hear the motion because the matter was being compelled to arbitration. The court emphasized that it had limited jurisdiction to address the mechanic's lien issue, and would not be addressing the merits of the parties' dispute.

The court granted the motion to remove the mechanic's lien on the basis that JDSS had performed work under the contract without a license.[6] The court explained that this conclusion flowed solely from the assignment agreement; because "JDSS assumed Stone's rights and obligations under the [Manela] [c]ontract" on March 15, 2015, "from March 15, 2015 to June 22, 2015, JDSS performed contractor services for which it was not licensed." The court further concluded that the assignment distinguished the facts before it from a situation in which there was a mere change in a contractor's business form. (Cf. *E. J. Franks Construction, Inc. v. Sahota* (2014) 226 Cal.App.4th 1123, 1129-1130 (*Franks*).)

The court declined to characterize anything in its order as a finding of fact, emphasizing that it had "merely evaluat[ed] the

_____

[6] The court did not find that *Stone* had performed under the Manela contract without a license, nor did the ruling otherwise address the argument made in Manela's motion that Stone had done so in violation of section 7031. Manela presented two other bases on which he argued the court should remove the mechanic's lien, but the court rejected these.

10

probable validity of [d]efendants' mechanic['s] lien, not the merits of this claim or claims that are compelled in arbitration."**7**

The Stone parties filed an ex parte application and/or motion seeking reconsideration of the trial court's order removing the mechanic's lien, relief under Code of Civil Procedure section 473, and/or leave to amend their complaint to correct (primarily by deleting the complaint's reference to the March 15, 2015 start date for when JDSS began providing services under the contract). The Stone parties also requested an evidentiary hearing on the issue of JDSS's compliance with section 7031. In connection with these requests, Stone filed another declaration, in which he stated that the assignment "was not implemented until such time as my contractor[']s license number 425872 was reissued on June 22, 2015 in the name of JDSS with myself as the qualifying individual under the same license" and that he "personally performed all contractor work on the Manela parties['] home improvement project from January 4, 2015 until June 22, 2015." (Capitalization omitted.)

At the ex parte hearing, the court explained that even assuming the Stone parties' most recent version of events were true, "it wouldn't . . . change[ ] my tentative [ruling] anyway . . . because there's no dispute there was a complete assignment in March to that corporation [JDSS], which was not licensed." The

---

**7** We note, however, that Manela later filed a revised statement of claims in the arbitration proceeding, relying in part on the trial court's order regarding the mechanic's lien motion. Among other things, Manela alleged that the trial court's "finding" on JDSS's performance of services without a license meant Manela may recoup the over $2 million in payments he made to the Stone parties under the Manela contract.

11

court overruled Manela's evidentiary objections to the most recent Stone declaration, and noted—but did not make any findings resolving—the conflicts between the various Stone declarations.[8]

The court denied the Stone parties' request for ex parte relief, except for granting them leave to amend their complaint.

## DISCUSSION

The Stone parties filed a petition for writ of mandate in this court (case No. B302131) challenging the court's order removing the mechanic's lien, as well as a notice of appeal (case No. B302660) challenging both that order and the order denying the Stone parties' requested ex parte relief. This court initially issued an order to show cause in the writ proceeding, then discharged the order to show cause and informed the parties that the writ petition would be considered with this appeal.

We conclude—and Manela does not contest—that the order removing the mechanic's lien is appealable. (See *Howard S. Wright Construction Co. v. Superior Court* (2003) 106 Cal.App.4th 314, 318 ["the grant of a motion to remove a mechanic's lien is essentially a judgment on the underlying foreclosure action that no lien exists—a judgment that, upon recordation, removes the lien from the public records . . . [a]nd . . . is a final, appealable judgment for which writ relief would ordinarily be denied,"

---

[8] Specifically, the court commented, "The problem I'm having is I have different declarations under penalty of perjury. . . . Am I to basically accept one version and ignore the other? Obviously if this was in trial, you would be able to—he would be able to point out inconsistencies for the jury to decide which is correct and which isn't correct."

12

fn. omitted].)  We therefore consider the merits of the Stone parties' appeal from the order removing their mechanic's lien.**9**

A motion to remove a mechanic's lien should be granted only when the lienholders (here, the Stone parties) fail to make a threshold showing of the "probable validity of the lien." (*Lambert v. Superior Court* (1991) 228 Cal.App.3d 383, 387.) Thus, by removing the mechanic's lien in this case based on the applicability of section 7031, the trial court concluded the Stone parties had failed to show it was "probable" that section 7031 did not apply and/or did not require forfeiture of compensation under the contract.  On appeal, the Stone parties argue the evidence does not support the court's conclusion in this regard. For reasons we discuss below, we agree.

### A.     *Applicable Law Regarding Section 7031 Forfeiture*

The Contractors State License Law (CSLL) (§ 7000 et seq.) governs construction business in California in a manner intended to " ' "protect the public from incompetent or dishonest providers of building and construction services.  [Citation.]"  [Citation.]' " (*Pacific Caisson & Shoring, Inc. v. Bernards Bros. Inc.* (2011) 198 Cal.App.4th 681, 687.)  The CSLL requires all contractors "be licensed unless exempt."  (*White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 517.)  Section 7031, subdivision (a) sets forth the general rule that "no person engaged in the business

_____

**9** Our disposition of the Stone parties' appeal from this order moots their appeal from the subsequent order seeking reconsideration and related ex parte relief.  It likewise moots their writ petition (case No. B302131), which seeks relief also sought in the appeal.  We deny the writ petition on that basis by separate order, concurrently filed with this opinion.

or acting in the capacity of a contractor, may bring or maintain any action . . . for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that they were a duly licensed contractor at all times during the performance of that act or contract."  In *M.W. Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412 *(M.W. Erectors)*, the California Supreme Court made clear the all-or-nothing nature of section 7031's forfeiture provisions, explaining that a contractor "is ineligible to recover *any* compensation under the terms of [section 7031], if, at *any* time during performance of an agreement for contractor services, he or she was not duly licensed."[10]  (*M.W. Erectors*, *supra*, at p. 425, italics omitted; *id.* at pp. 419 & 425–426.)

Importantly for purposes of this appeal, the time period during which section 7031 requires a party to be licensed in order to avoid forfeiture of compensation under a contract is *not* the

_____

[10] There is a singular, narrow "substantial compliance" exception available under very specific circumstances set forth in section 7031, subdivision (e).  (§ 7031, subd. (e); see *M.W. Erectors, supra*, 36 Cal.4th at pp. 418–419 & 433–434.)  The Stone parties do not argue that this exception applies.  (See § 7031, subd. (e) ["the court may determine that there has been substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, and (3) acted promptly and in good faith to remedy the failure to comply with the licensure requirements upon learning of the failure"].)

period during which the party is "engag[ed] in the business or act[ing] in the capacity of a contractor," but rather the period when the contractor is performing under the contract.[11] (See *M.W. Erectors, supra*, 36 Cal.4th at p. 435, italics omitted; *ibid.* ["the due licensure of which section 7031[, subdivision] (a) speaks is due licensure while the contract itself is being performed"].) For this reason, section 7031 does not require forfeiture based on the contractor executing a construction contract while unlicensed.[12] (*M.W. Erectors, supra*, 36 Cal.4th at pp. 435−437 & 440−441.) "[I]f fully licensed at all times

---

[11] When no construction contract is in place, the time frame during which section 7031 requires a party be licensed in order to avoid forfeiture also is not determined by when the party is engaged in the business or acting in the capacity of a contractor, but rather by when the party is performing the acts for which the CSLL requires a license and for which compensation is sought. (See § 7031, subd. (a).)

[12] Our Supreme Court more fully explains this point as follows: "At the outset, we take note that allowing suit and recovery under such circumstances [when the contractor is not licensed at the time it executes the contract] violates no express term of section 7031[, subdivision] (a). That statute prohibits a contractor from suing 'for the collection of compensation for the performance of any act or contract where a license is required . . . without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract.' [Citation.] The 'act' of executing an agreement is not one for which a contractor seeks compensation; rather, he or she pursues payment for carrying out the contract in a satisfactory manner. [Citation.] Hence, we conclude, the due licensure of which section 7031[, subdivision] (a) speaks is due licensure while the contract itself is being performed." (*M.W. Erectors, supra*, 36 Cal.4th at p. 435, italics omitted.)

15

during *contractual performance*, a contractor is not barred from recovering compensation for the work solely because he or she was unlicensed when the contract was executed." (*Id.* at p. 419, italics added & omitted.) *M.W. Erectors* explains that this conclusion follows in part from the plain language of section 7031, and in part from the CSLL more broadly treating unlicensed acts "in the capacity of a contractor" differently than unlicensed performance of a construction contract. (See *M.W. Erectors, supra*, 36 Cal.4th at p. 437.) Namely, the CSLL penalizes the broader general category of unlicensed acts in the capacity of a contractor in section 7028, not section 7031, and does so with civil and criminal penalties *other* than forfeiture. (*Id.* at pp. 440−441; see § 7028, subd. (a) [it is a misdemeanor "for a person to engage in the business of, or act in the capacity of, a contractor within this state" without having a license].)

For the purposes of determining when a license is required to avoid section 7031 forfeiture, "performance of . . . [the] contract" refers to when the contractor is "carrying out" the contract, and/or engaging in work for which the contractor will seek compensation under the contract. (*M.W. Erectors, supra*, 36 Cal.4th at p. 435, italics omitted.) This does not mean that the contractor is personally performing construction work. Work by someone other than the contractor will often reflect a contractor "carrying out" the contract and/or work for which the contractor expects compensation under the contract, if the person performing the work is doing so at the request of or otherwise on behalf of the contractor. (See *Judicial Council of California v. Jacobs Facilities, Inc.* (2015) 239 Cal.App.4th 882, 897 (*Jacobs Facilities*) [contractor performed under contract when, as contemplated by the contract, the contractor "deliver[ed] services"

16

performed by others and accepted compensation for them]; *WSS Industrial Construction, Inc. v. Great West Contractors, Inc.* (2008) 162 Cal.App.4th 581, 591−594 [subcontractor doing work under a construction contract at contractor's request while the contractor was unlicensed triggered section 7031 forfeiture of contractor's compensation under the contract].)

The Stone parties primarily rely on *Franks, supra,* 226 Cal.App.4th 1123, a decision that draws heavily on the reasoning of *M.W. Erectors* and is factually similar to the instant appeal. In *Franks*, an individual contractor entered into a home construction contract with the defendant homeowners. During performance of the contract, he incorporated the plaintiff corporation, of which he was the sole shareholder. The contractor's license that had been issued initially to him in his personal capacity was reissued to his corporation, at which point the corporation took over work under the contract. (*Id.* at p. 1126.) The defendants argued that, because the corporation had not been licensed at all times during the performance of the contract, the plaintiff corporation had violated section 7031 and could not collect payment for any work under the contract. (*Franks*, *supra*, p. 1126.) The Court of Appeal disagreed, holding that these facts "involve[d] a licensed contractor and a change in business entity status. Proper licensure was in place at all times" (*id.* at p. 1129), in that a licensed individual was the contractor on the project until he stopped doing business as a sole proprietorship, incorporated his business, and transferred his license to the resulting new corporate entity, at which point that licensed corporate entity began acting as the contractor on the project. (See *id.* at pp. 1129−1130.) Absent a gap in the contractor's licensure during contractual performance,

17

"section 7031 [did] not apply." (*Franks*, *supra*, at p. 1128.) *Franks* distinguished cases requiring section 7031 forfeiture as "involv[ing] a period wherein the contractor was unlicensed or where a license previously issued lapsed during the construction project." (*Franks*, *supra*, p. 1129.)

With this precedent regarding section 7031 in mind, we turn to the Stone parties' argument that the trial court erred in its reliance on section 7031 to remove the mechanic's lien in this case.

### B.    *Section 7031 Does Not Apply*

The Stone parties argue that the evidence does not support the trial court's conclusion that they failed to show section 7031 probably does not require forfeiture.  Specifically, the Stone parties argue neither the assignment agreement, nor the record as a whole, provides substantial evidence that JDSS performed under the contract before it was licensed.

Although we ordinarily review evidentiary challenges for substantial evidence, that standard " 'is typically implicated when a defendant contends that the plaintiff succeeded at trial in spite of insufficient evidence.' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved of on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989.)  " 'In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden' "—here, the court's implicit finding that Stone parties failed to prove the probable validity of the lien—and that party appeals, " 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.' " (*Dreyer's Grand Ice Cream,*

*Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.) We thus consider whether the evidence compels the conclusion that JDSS did not perform under the contract while unlicensed.

The parties identify the following evidence in this regard: the assignment agreement; the June 10, 2015 change order; and the conflicting statements by Stone regarding his work under the Manela contract. We address each in turn below.

### 1.     The assignment agreement

The trial court viewed the assignment agreement as conclusive evidence that JDSS began performing under the contract as of March 15, 2015 (the effective date listed in the assignment). The Stone parties argue the assignment agreement cannot serve as such evidence. We agree.

Under the assignment agreement, Stone assigned his rights and purported to delegate the performance of his duties under the Manela contract to JDSS, and JDSS accepted the assignment of rights and assumed Stone's duties. (See p. 4, fn. 2, *ante*.) A third party's agreement to assume a contractor's duties under a construction contract without a license is akin to the execution of a construction contract without a license, something the California Supreme Court has explained does not trigger section 7031 forfeiture. (*M.W. Erectors*, *supra*, 36 Cal.4th at pp. 419, 435−437 & 440−441.) Such an assumption is neither an act for which the assignee may seek compensation under the contract, nor an act that can be fairly characterized as "carrying out the contract." (*Id.* at p. 435, italics omitted.) It thus cannot constitute " 'performance of that . . . contract.' " (*Ibid.*, italics omitted.) Moreover, as in the case of unlicensed contractual execution discussed in *M.W. Erectors*, "[n]o compelling reason exists to conclude that the public protective purposes of the CSLL

19

can only be served by deeming [a construction contract assigned before the assignee is licensed] illegal, void, and unenforceable *on that basis alone.*" (*Id.* at p. 441, italics added.)

Thus, for the purposes of applying section 7031, the assignment agreement cannot establish that JDSS began performing under the contract before it was licensed.

### 2.     The June 10, 2015 change order

Manela argues that the June 10, 2015 change order on JDSS letterhead reflects JDSS performing under the contract as of that date. But the change order describes work to be performed in the future; it does not indicate whether or when the work was performed. Thus, a reasonable trier of fact could not infer from this document that any work had been performed at the request of or on behalf of JDSS before June 22, 2015.

Nor does JDSS's mere issuance of a change order meet the definition of performance of the contract set forth in *M.W. Erectors,* because it is neither an act "for which [JDSS] seeks compensation" nor an act "carrying out the contract." (*M.W. Erectors, supra*, 36 Cal.4th at p. 435, italics omitted.) Rather, the Manela contract provides that work may be added to the contract's scope through a written change order signed by both parties, meaning that executing a change order is an act *amending* the original contract and, like entering into the contract, does not constitute performance thereunder. Although issuing a change order is certainly an " 'act[ ] in the capacity of a contractor' " (*id.* at p. 437), *M.W. Erectors* distinguishes such acts from the narrower category of performance under a specific contract, and makes clear that the former does not trigger

20

section 7031 forfeiture.[13]  (See *M.W. Erectors, supra*, at
pp. 435-437 & 440−441.)

### 3.  Stone's statements regarding his work under the Manela contract

Manela does not contend, and the record contains no
evidence, that any person other than Stone or subcontractors
hired by him performed any work under the Manela contract
before June 22, 2015.  The Stone parties' verified complaint
and Stone's multiple declarations conflict regarding whether,
before that date, Stone performed that work and/or engaged
others to perform that work in his personal capacity or on behalf
of JDSS.  Regardless, however, of what Stone declared or wrote in
his complaint, and notwithstanding the assignment agreement,
Stone remained personally liable for his promised performance
under the Manela contract in the absence of the Manelas' consent
to the purported delegation.  (See Civ. Code, § 1457; *Jacobs
Facilities, supra,* 239 Cal.App.4th at pp. 901−902 ["[w]ithout
the consent of the obligee, the delegation of a duty by an obligor
under a contract does not extinguish the obligor's duty"]; see
also *Wiseman v. Sklar* (1930) 104 Cal.App. 369, 374-375 [" '[t]he
obligations of an assignor of a contract continue to rest upon
him' " "irrespective of the legality or lack of legality of the
assignment, [the assignor] [is] at all times responsible to [the

---

[13] To the extent *Jacobs Facilities* stands for the proposition
that a contractor executing contractual amendments or invoices
under a construction contract necessarily constitutes the
performance of that contract for the purposes of section 7031
(see, e.g., *Jacobs, supra*, 239 Cal.App.4th at pp. 897 & 905), we
view it as inconsistent with *M.W. Erectors*, and decline to follow
it.

other parties] under the contract"].)  Yet, Manela does not contend that the Manelas consented to the delegation before June 22, 2015, nor does the record contain evidence supporting any such approval.

The assignment agreement purports to assign Stone's rights and delegate his obligations under the Manela contract to JDSS, effective March 15, 2015.  Generally speaking, "[t]he statutes in this state clearly manifest a policy in favor of the free transferability of all types of property, including rights under contracts" (*Farmland Irrigation Co. v. Dopplmaier* (1957) 48 Cal.2d 208, 222), but contractual "duties imposed upon one party may be of such a personal nature that their performance by someone else would in effect deprive the other party of that for which he bargained.  The duties in such a situation cannot be delegated."  (*Ibid*.; see *Superbrace, Inc. v. Tidwell* (2004) 124 Cal.App.4th 388, 402 (*Superbrace*) [same].)  For example, duties "are not delegable in either of the following situations: (1) where in the nature or circumstances of the case, the skill, credit or other personal quality of the party was a distinctive characteristic of the thing stipulated for, namely, the personal nature of the contract itself, or (2) the personal quality of the party was a material inducement to the other party entering into the contract." (*Edgar Rice Burroughs, Inc. v. Commodore Productions & Artists, Inc.* (1959) 167 Cal.App.2d 463, 469.) Here, the contractor services Stone agreed to provide to the Manelas in the Manela contract are personal services to be rendered by Stone.  According to the allegations in Manela's complaint (which Manela reiterated in his brief to this court), "Manela felt comfortable enough to agree to the terms and execute a fixed price construction contract with Stone" and

22

"agreed to hire Stone notwithstanding Stone's substantially higher bid [for the project] because Stone represented that he was the most qualified general contractor to handle the project, he would provide the highest quality of service and oversight of the project, [and] he would complete the project pursuant to a clear, fixed price construction contract" within a certain amount of time. Thus, that Stone would be the contractor on the project was a "material inducement to the [Manelas] entering into the contract." (See *id*. at p. 469.) Under such circumstances, one's obligation to perform personal services under a contract cannot be transferred " 'without the consent of the person entitled to such performance.' " (*Superbrace, supra*, 124 Cal.App.4th at p. 404.)

Manela does not argue that he consented to the assignment agreement before June 22, 2015,[14] nor does the record contain any evidence that this occurred. The June 10, 2015 change order on JDSS letterhead does not reflect the Manelas' acquiescence to JDSS stepping in for Stone before June 22, 2015, as it is not signed as approved by either of the Manelas, nor does it indicate if or when the Manelas paid for such proposed work[15] or when

---

[14] To the contrary, in his motion to remove the mechanic's lien, Manela claimed he "did not consent to any assignment of the [Manela] contract from Stone to JDSS" at any point, a claim he then reiterated in his reply supporting the motion. (Capitalization omitted.)

[15] The document appears to bear a "paid" stamp with an empty box below it. (Capitalization omitted.) Even if this stamp is understood as indicating payment despite the lack of any signature, initials, or date in that box, it still does not indicate *when* such payment occurred. To the contrary, other notations on

23

the work was done. Rather, the earliest evidence in the record that might constitute the Manelas' acquiescence or consent to the assignment agreement was their payment of JDSS invoices for work performed under the Manela contract beginning in August 2015. Absent any evidence of the Manelas' consent to the assignment agreement before June 22, 2015, Stone's obligations under the Manela contract still existed before June 22, 2015, notwithstanding that the assignment agreement professes to be effective as of March 15, 2015.[16] As a result, regardless of how Stone characterizes the work he performed before June 22, 2015, he could not have been performing that work at the instruction of or on behalf of JDSS, because he was already contractually obligated to perform it in his personal capacity during that time period. Put differently, until the Manelas consented to the assignment agreement, "[t]he corporation [JDSS] was not the contracting party," and thus "did not act 'as a contractor without a license.' " (*Franks, supra,* 226 Cal.App.4th at p. 1130.)

The record thus compels the conclusion that Stone was not performing under the contract *on behalf of JDSS* prior to JDSS becoming duly licensed, that JDSS therefore was not performing

___

the document indicate the order was "invoiced" on an unspecified date.

[16] We need not and do not reach any conclusions as to if or when the Manelas consented to the assignment, except to note that there is no evidence in the record from which a reasonable trier of fact could conclude that they consented to it before June 22, 2015.

under the contract before it was licensed, and that section 7031 therefore does not apply.[17]

### 4. *Franks*

Our conclusion in this regard is consistent with the policy rationale set forth in *Franks*, which we find persuasive. Here, as in *Franks*, the same contractor's license was in place at all times during the performance of the contract, held at first by an individual, then by that individual's corporation. (See *Franks, supra*, 226 Cal.App.4th at pp. 1128−1129; see also *Jacobs Facilities, supra*, 239 Cal.App.4th at p. 899 [distinguishing *Franks* because "[t]he continuity of license and business entity that was central to the rationale of *Franks* was not present"].) *Franks* concluded that, under these circumstances, allowing a

---

[17] Manela does not argue that, if we conclude the trial court erred in determining JDSS performed under the Manela contract without a license, we should remand for the trial court to make factual findings regarding whether *Stone* (as opposed to JDSS) performed under the contract after his license was reissued to JDSS on June 22, 2015, and whether the lien (held by both Stone and JDSS) should be removed on this alternative basis. By failing to raise this argument on appeal, Manela has forfeited it, and we need not address it further. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [argument not raised on appeal is forfeited]; *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 267 [same].)

Similarly, we need not address arguments the trial court rejected below as bases for removing the mechanic's lien (timeliness and a lien held by multiple parties), because Manela does not argue on appeal that the court erred in rejecting these arguments or that they provide alternative bases for affirming the court's order.

25

change in business form to create a gap in licensing "would lead to absurd results" and would "effectively preclude licensed sole proprietor contractors from lawfully incorporating and obtaining a reissue of a general contracting license to the new business entity at any time during the construction period." (*Franks*, *supra*, at p. 1129.)

Manela argues the trial court correctly concluded that the instant case is distinguishable from *Franks* because it involves the additional element of an assignment, rather than just a change in business entity. But given that the assignment agreement here could not unilaterally relieve Stone of his duties to Manela under the original agreement (absent consent by the Manelas), this is a distinction without a difference. Nor does the additional element of the assignment agreement render any less applicable *Franks'* conclusion that forfeiture under such circumstances would not serve "[t]he purpose of section 7031[,] [which] is to deter unlicensed contractors from recovering compensation for their work." (*Franks, supra*, 226 Cal.App.4th at p. 1129, italics omitted.) Just as the law "is not intended to deter licensed contractors from changing a business entity's status, and obtaining a reissuance of the license to the new entity[,] during a contract period" (*ibid.*), it is not intended to deter delegation of contractual obligations based on such a "change in business entity status" and concomitant reissuance of a license to that new entity. (*Ibid.*)

Importantly, *Franks* did not treat the individual and the corporation as interchangeable for the purposes of section 7031. To the contrary, it recognized, as it must, that "a distinction between a corporation and an individual [is] significant for purposes of the CSLL" (*Franks, supra*, 226 Cal.App.4th at

26

pp. 1129−1130), a concept that played a prominent role in *Opp v. St. Paul Fire & Marine Ins. Co.* (2007) 154 Cal.App.4th 71, 72–73 (*Opp*).  The Court of Appeal in *Opp* required a corporation to forfeit all payment for work under a construction contract the corporation had signed because the corporation was unlicensed during the performance of the contract, even though the corporation's president had a license during that time.  (*Id.* at pp. 74−76.)  In executing the contract, the corporation had represented that it held the license actually held by its president.  (*Id.* at pp. 72−73.)  The Court of Appeal in *Franks* distinguished *Opp* in part by noting that "[u]nlike Opp, Franks did not misrepresent his contractor's license by claiming it belonged to a corporate entity.  In fact, the corporate entity did not exist when the contract . . . was executed." (*Franks, supra*, at p. 1130.)  *Opp* is distinguishable from this case on this same basis.  *Franks* further distinguished *Opp* by noting that "recogniz[ing] the individual as a contracting party in th[e] circumstances [present in *Opp*] would, among other things, encourage fraud through the misuse of another person's contractor's license and allow an individual to enjoy the benefits of incorporation while avoiding the burdens by effectively repudiating the existence of the corporation when it was convenient to do so." (*Id.* at p. 1130.)  This was not the case in *Franks*, nor is it the case here.

## DISPOSITION

The order of the trial court removing the mechanic's lien is reversed.  Upon remand, the trial court is instructed to enter a new order confirming the validity of the mechanic's lien notwithstanding Manela's motion to remove it.

The Stone parties are awarded their costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

BENDIX, J.